SOBEL *v.* STEELCRAFT PISTON RING SALES, INC.
JAFFE *v.* SAME.

1. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE.
   Reformation of an instrument may be granted in a proper case for mutual mistake.

2. SAME—BURDEN OF PROOF—EVIDENCE.
   The party seeking to reform an instrument on the ground of mutual mistake has the burden of establishing the mistake

---

As to reformation for mutual mistake, see 2 Restatement, Contracts, § 504.

That specific provisions in a contract qualify general provisions, see 1 Restatement, Contracts, § 236(c).

and the evidence must be clear and convincing and establish beyond cavil the right to reformation.

3. SAME—SETTLEMENT AGREEMENT—PATENTED PISTON RINGS—EVIDENCE.

In suit for reformation of settlement agreement whereby contract of distributor of manufacturer's patented piston rings was terminated, upon execution of which manufacturer had paid some cash, agreed to pay an additional sum in 30 days and a further sum later as evidenced by a note, and distributor agreed to turn over certain lists, literature, advertising matter, office furniture, "and approximately 1,000 pounds of rings," evidence *held*, insufficient to disturb findings of circuit court commissioner upon which trial court based decree without rendering an opinion that distributor owed manufacturer 1,000 pounds of rings rather than that such provision was intended to release manufacturer from delivery of 1,050 pounds of rings that had become due under a previous agreement settling a dispute which had arisen out of Canadian distribution.

4. COMPROMISE AND SETTLEMENT—CONSTRUCTION OF CONTRACTS—EJUSDEM GENERIS—SPECIFIC WORDS CONTROLLING.

Under settlement agreement specifically providing that piston ring distributor's original contract was thereby cancelled and including general statement that the parties should be under no obligation to each other except as therein provided there was no implied cancellation under the doctrine of *ejusdem generis* of provision of a previous settlement agreement arising out of another dispute whereby manufacturer was obligated to deliver a quantity of piston rings to distributor, the parties having used both general and specific words in their contract, and the latter being controlling.

5. DAMAGES—PISTON RING DISTRIBUTOR'S AGREEMENT—SPECULATIVE BASIS—CONTRACT PRICE—COMPROMISE AND SETTLEMENT.

In suit for distributor's breach of contract to deliver a quantity of piston rings under a settlement agreement between manufacturer and distributor who had exclusive right to purchase them at $2 a pound, damages are fixed at the distributor's original contract price rather than the approximate value as possibly computed from amount of claim of a third party, made prior to execution of such settlement agreement and constituting but one element of an isolated transaction.

6. EQUITY—REFORMATION OF INSTRUMENTS—CROSS-COMPLAINANT'S RELIEF—CREDITS.

In suit to reform settlement agreement cancelling piston ring distributor's contract with manufacturer wherein latter sought

to recover damages for former's breach of a previous settlement agreement, the manufacturer must do equity and give credit therefor on note it had given distributor incident.to the same settlement plus credits of collections stipulated in the record as having been received at time of the hearing as well as returned merchandise for which provision in the settlement agreement had also been made.

7. Costs—Consolidated Case—Printing Record and Briefs—Attorney Fees.

On appeal in which action at law on note and suit in equity for reformation of a settlement agreement were consolidated, one case affirmed and the other modified substantially, appellants are permitted to tax the cost of printing the record and briefs but no attorney fees are allowed.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted April 4, 1940. (Docket Nos. 35, 36, Calendar Nos. 40,937, 40,938.) Decided June 19, 1940.

Bill by Maurice H. Sobel and Eugene J. Brock against Steelcraft Piston Ring Sales, Incorporated, a Michigan corporation, and James J. Carroll for reformation of an agreement, appointment of a receiver, an injunction and other relief. Cross bill by defendant corporation against plaintiffs for an accounting, specific performance of agreements, and other relief.

Assumpsit by Helen Jaffe against Steelcraft Piston Ring Sales, Incorporated, a Michigan corporation, and M. H. Sobel and E. J. Brock for sums due on a promissory note.

Cases consolidated for trial and appeal. Judgment and decree for defendants. Plaintiffs appeal. Judgment affirmed. Decree modified and affirmed.

*J. Henry Freid* (*John Sklar,* of counsel), for plaintiffs Sobel and Brock.

*Joseph B. Beckenstein* (*John Sklar,* of counsel), for plaintiff Jaffe.

*Walter M. Nelson,* for defendants Steelcraft Piston Ring Sales, Inc., and Carroll.

Butzel, J. This is an appeal on one record from a judgment rendered in a suit in assumpsit on a promissory note instituted by Helen Jaffe against Steelcraft Piston Ring Sales, Inc., M. H. Sobel and E. J. Brock, and from a decree rendered on a bill in chancery for the reformation of a contract and for other relief by Sobel and Brock against Steelcraft Piston Ring Sales, Inc., and James J. Carroll. Because the suits arise out of the same transactions and subjects of action, it was stipulated that the findings of fact in the chancery suit shall be determinative of the assumpsit action. A judgment of no cause of action was entered in the suit at law, and an affirmative decree in favor of defendant Steelcraft was awarded on its cross-complaint in the chancery cause. We shall refer to Sobel and Brock as plaintiffs.

Defendant James J. Carroll was president, director and a large stockholder of defendant Steelcraft Piston Ring Sales, Inc. The corporation was formed in 1933 principally for the purpose of manufacturing and marketing a piston ring that Carroll had invented. Plaintiffs Maurice H. Sobel and Eugene J. Brock were salesmen of experience and ability. After some negotiations, Steelcraft Corporation entered into a written contract of December 29, 1933, whereby plaintiffs were appointed sole distributors and granted the exclusive right to purchase Steelcraft's piston rings at the price of $2 per pound. Steelcraft agreed to save plaintiffs harmless from liability or expense arising out of any patent litigation or infringement.

Plaintiffs opened an office in Detroit through which they handled a large volume of business. The orders obtained were submitted to Steelcraft's factory, and

the goods were shipped directly to the customers, but plaintiffs rendered the accounts as owners and made their own collections.

Plaintiffs appointed a Canadian subdistributor who sold a large quantity of piston rings. A claim of patent infringement arose in Canada and it resulted in a controversy between the contracting parties. While the contract contained no provision for territorial limitations or Canadian patent litigation, defendant acknowledged an interest, if not a legal obligation therein, and gave material assistance in the unsuccessful attempt to maintain the patent in Canada. Under protest an agreement was made to indemnify for the expenses incurred in the Canadian litigation. On January 23, 1935, settlements were made between Steelcraft and the Canadian subdistributor, and also with plaintiffs on account of the Canadian account. Plaintiffs assigned to Steelcraft an account of $2,800 due from the Canadian subdistributor, and Steelcraft agreed to deliver to plaintiffs 1,050 pounds of piston rings at the rate of 100 pounds per month beginning on the 15th of the following April. In a separate agreement Steelcraft released the Canadian distributor from the $2,800 and paid him other considerations. This settlement was followed by controversies and general dissatisfaction. On March 6, 1935, plaintiffs offered to sell to defendant their entire business and sales agency for $7,000 in cash and $2,000 in negotiable paper, offering to turn over to defendant the operation and management of the business, all correspondence, files, books and records and such assets as "1,050 pounds of rings," advertising matter, et cetera. On March 15, 1935, a written agreement was executed. Plaintiffs were to receive $5,000 in cash, $1,700 in 30 days, and $2,000 on or before July 1, 1935, evidenced by a note of Steelcraft indorsed by Carroll.

Plaintiffs agreed to turn over to Steelcraft,

"All literature, catalogues, advertising matter, mailing list, rating lists, cuts, mats used in the printing of the various literature and advertising matter, and the following office fixtures heretofore purchased from the Cloutier Furniture Company, consisting of the following: 2 large metal cabinets; 1 conference table; 1 rug; expanders and shim stock; and *approximately 1,000 pounds of rings* and files to date." (Italics ours.)

Steelcraft agreed to carry out all outstanding agreements of plaintiffs and their dealers in relation to territory, supply of rings, et cetera. All accounts were to remain the property of plaintiffs, but Steelcraft agreed to turn over all remittances as received and, further, to assist in making collections. The concluding paragraph of the agreement stated that upon payment of the agreed sums "the contract of December 29, 1933, shall be completely ignored and terminated as if the same had not been entered into, and the parties hereto shall be under no obligation to each other, except as herein provided."

Steelcraft failed to pay the $2,000 note which had been transferred to one Helen Jaffe; she brought suit to enforce payment. It is conceded that she holds the note subject to any infirmities that might be asserted against the original owner. Steelcraft in its answer to the law action claimed that there was due it from plaintiffs 1,000 pounds of piston rings of the value of $2,350 which plaintiffs failed to deliver to defendant under the settlement agreement of March 15, 1935, and that this default excused payment. Shortly after this suit was started, plaintiffs filed a bill in chancery to reform the settlement agreement so as to conform to the alleged understanding of the parties. The law and chancery cases, as combined

by stipulation, were referred to a circuit court commissioner who took voluminous testimony.

It is the claim of plaintiffs that the clause wherein they agreed to deliver approximately 1,000 pounds of rings referred to the 1,050 pounds of rings that became due from defendant to plaintiffs under the agreement made following the Canadian patent litigation, and that the expression ''approximately 1,000 pounds'' of rings was the scrivener's general reference to the 1,050 pounds, the word ''approximately'' having been meant to express the idea of ''more or less.'' It is Steelcraft's claim that it not only was to be released from delivery of the 1,050 pounds, but that plaintiffs were to turn over to it 1,000 pounds which they had on hand and were to secure from an eastern warehouse or from other distributors. The source was not definitely described. Based on the commissioner's report, the circuit judge without opinion entered a decree denying reformation and ordering payment of $242.02 to Steelcraft. This was based on the findings that plaintiffs owed Steelcraft 1,000 pounds of rings under the final agreement, and that Steelcraft had collected $94.65 from dealers since the execution of the agreement; that the undelivered 1,000 pounds of rings were of the value of $2,666.67, on which sum interest was computed; interest was also computed on the $2,000 note.

Plaintiffs claim they are entitled to reformation, and that there is no basis in the record for the damages assessed. Reformation may be granted in a proper case for mutual mistake. *DeGood* v. *Gillard,* 251 Mich. 85. The burden of establishing the mistake is on the party seeking to reform. *Lahey* v. *Hackley Union National Bank,* 270 Mich. 438. The evidence must be clear and convincing and must establish beyond cavil the right to reformation. *Schuler* v. *Bucuss,* 253 Mich. 479; *Donaldson* v. *Hull,* 258

Mich. 388. Plaintiffs have succeeded in casting considerable doubt as to whether the contract as written expressed the intention of the parties, but we are not so convinced of its failure as to disturb the findings made from testimony so highly conflicting.

Plaintiffs kept no warehouse in Michigan. From the statements we may well doubt whether plaintiffs had on hand 1,000 pounds of piston rings or whether defendants had any reason for believing they had. When examined by his counsel, Carroll corroborated plaintiffs' claims that the "approximately" 1,000 pounds of rings referred to the 1,050 pounds that were subsequently to be delivered; but on further examination, he corrected his testimony and was positive in his insistence that the 1,000 pounds to be delivered by plaintiffs was independent of the release of the obligation to deliver 1,050 pounds to plaintiffs. He further testified that plaintiffs had some rings on hand in a New England warehouse, that they were to receive some additional rings from their former agent, and that the nature of the settlement was such that he wanted all of the unsold rings back in his possession. Mr. Palliaer, an attorney present at the time the agreement was executed, testified that the delivery of the 1,000 pounds was absolutely distinct from the 1,050 pounds referred to in the prior agreement, and that the obligation to deliver the 1,050 pounds was terminated by the final clause of the agreement here sought to be reformed. He stated positively that plaintiffs agreed to collect and deliver 1,000 pounds of rings to Steelcraft.

Our attention is directed at the typewritten agreement, in which, in the very line referred to "approximately 1,000 pounds of rings," the words "and files to date" are inserted in handwriting and initialed by Carroll and Brock. This serves to give some indication of how carefully the contract was gone

over and how painstakingly the particular words may have been examined. The attorney who drew the contract represented plaintiffs. He stated that to his understanding the expression "approximately 1,000 pounds of rings" referred to the 1,050 pounds due plaintiffs on the settlement of the Canadian affairs. Plaintiffs categorically denied a large part of defendant's proofs and urged strong reasons for the mistake. It would serve no useful purpose to go into the complicated affairs further. We are not inclined to disturb the findings which resolved the conflicts of the testimony; on such a record we think it would be unwise to attempt to displace the findings of the trier who had the witnesses before him.

It is claimed that since the distributors' contract of December 29, 1933, was the only one specifically enumerated for cancellation, the doctrine of *ejusdem generis* would bar a claim that the credit memorandum for 1,050 pounds was also impliedly cancelled. Although the agreement of January 23, 1935, was not expressly terminated by the arrangement of March 15, 1935, there is a general statement that parties should be under no obligation to each other "except as herein provided." The general principles fail us here. When the parties use both general and specific words, the latter will ordinarily be controlling. *Goldberg* v. *Cities Service Oil Co.*, 275 Mich. 199.

The judgment in the law action is affirmed, but the decree in the equity suit must be modified. The court below granted $2,666.67 damages on the cross-complaint for failure to deliver the 1,000 pounds of rings. We are not told how this figure was computed; perhaps the rate of $2.66 per pound was determined from the terms of the settlement of the Canadian matters wherein a $2,800 claim was exchanged for a promise to deliver 1,050 pounds of rings. At best

this was only an isolated transaction, and was only a part of a general settlement. In the answer to plaintiffs' declaration, defendant fixed the value of the 1,000 pounds of rings at $2,350. We think the proper approach is to value the 1,000 pounds at $2 per pound, as provided in the contract, which would make the amount $2,000. However, the cross-complainant must do equity and give credit for the amount of the debt represented by the note, as it would be inequitable to allow defendant Steelcraft to recover damages on the contract and let it escape performance of its side of the agreement. By doing equity, the amount of damages for nondelivery of the rings will be offset by the amount of the note.

The decree must be further modified because plaintiffs are entitled to certain credits not included in the decree. The lower court allowed plaintiffs a credit of only $94.85 for payments made directly to Steelcraft subsequent to the settlement agreement, notwithstanding the fact that the stipulation in the record shows that the amount received up to the time of the hearing was $228.65. Thus, the credit was $133.80 less than the conceded amount; plaintiffs are entitled to $228.65.

The decree entered below gave plaintiffs no credit for any rings returned to defendant by the Buffalo agency. This was erroneous. Plaintiffs are entitled to credit for the value of the rings returned, but not for the merchandise of other producers. While the record does not disclose the weight of the returned goods manufactured by Steelcraft, defendants' counsel have admitted the weight to be 135 pounds, as opposed to the claim of 140 pounds by plaintiffs' counsel. As defendants claim that the object of the 1,000 pound provision was to bring into Steelcraft's control all outstanding rings, we think credit for the 135 pounds at the contract price should be allowed.

An additional credit should be allowed plaintiffs for $270.

Plaintiffs in the chancery case are entitled to a decree in their favor for the sum of $498.65. They may also tax the cost of printing the record and briefs. Inasmuch as one of the consolidated cases is affirmed and the other is modified substantially, no attorney fees will be allowed. A decree may be entered in accordance with this opinion.

Bushnell, C. J., and Sharpe, Potter, Chandler, North, McAllister, and Wiest, JJ., concurred.