### McCREARY v. SHIELDS.

1. EQUITY—MODIFICATION OF DECREE—SCAVENGER SALE.

Decree awarding title to lot to which plaintiff had received title over 25 years ago and adjoining lot by adverse possession some 10 years ago but requiring payment to defendant purchaser under so-called scavenger act of moneys expended by latter in acquiring deed from State land office board of latter lot is modified to give such defendant the alternative of such sum of money or a quitclaim deed to the former lot, still vacant, and worth much more than amount such defendant had expended (CL 1948, § 211.351 *et seq.*).

2. INJUNCTION—CIRCUIT COURT COMMISSIONER—OUSTER PROCEEDINGS —TITLE.

Injunction is granted against defendant circuit court commissioner from proceeding with ouster proceedings against plaintiff as to property which had been sold to defendant purchaser at so-called scavenger sale, where title thereto is decreed to be in plaintiff.

3. COSTS—APPEAL AND ERROR—MODIFICATION OF DECREE.

No costs are allowed on appeal, where decree is substantially modified, since neither party prevailed in full.

SHARPE and BOYLES, JJ., dissenting.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 6, 1951. (Docket No. 30, Calendar No. 44,945.) Decided January 15, 1952. Decided on rehearing April 10, 1952.

Bill by Mary Frances McCreary and others against Mary Jane Shields and Circuit Court Com-

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 28 Am Jur, Injunctions § 224.
[3] 14 Am Jur, Costs § 98.

missioner to determine that certain real estate is owned by plaintiffs. Cross bill by defendant Shields against plaintiffs to have her determined to be the owner. Decree for plaintiffs. Defendant Shields appeals. Modified and affirmed.

*Walter M. Nelson,* for plaintiffs.

*Vandeveer & Haggerty* (*Samuel A. Garzia,* of counsel), for defendant Shields.

Rᴇɪᴅ, J. : Plaintiffs filed their bill praying for a determination in equity that a certain house and lot is owned by plaintiff McCreary subject to a land contract made by her to her coplaintiffs, as against defendant Shields, who is a purchaser of the said property from the State on a mistaken supposition (as plaintiffs claim) that the lot defendant Shields bought was an adjacent vacant lot spoken of in the testimony as lot L. Plaintiffs also pray for an injunction against ouster proceedings and for other equitable relief.

Defendant Shields answered and filed a cross bill asking that she be decreed to be the owner of the premises in question and for other equitable relief.

On November 27, 1925, plaintiff McCreary and her husband (who died in 1946) received a warranty deed, in which the description covered premises spoken of in the testimony as lot L, a vacant lot, but the grantees and evidently the grantors also in said deed supposed the description to cover the premises spoken of in the testimony as lot K. Under that deed, possession has been continuous up to and including the time of the hearing in the trial court, by plaintiff McCreary and her husband and after his death by plaintiff McCreary and those claiming for her or under her authority; thus was covered a period of over 15 years before the deed to

the State hereinafter mentioned. So far as concerns any right, title, interest or claim of defendant, under the showing in this record plaintiff McCreary became the legal owner of lot K by adverse possession on November 27, 1940, and she and her husband became equitably the owners by the entireties of lot K on November 27, 1925.

An agreement by Mrs. McCreary to sell to her coplaintiffs, Mr. and Mrs. Makie, for $2,500, is dated August 24, 1946. The Makies are now in actual possession of the premises under that agreement.

The State through delinquent tax proceedings received title to the premises, lot K, June 3, 1941, and deeded the same to defendant Shields, March 27, 1947, for $150.* During its ownership, the State very evidently made no effort to collect rent from any of the plaintiffs, none of whom knew that the State had title until the ouster proceedings had been begun in 1947.

In the meantime plaintiff McCreary, and her husband during his lifetime, had paid the taxes on lot L, supposing that to be lot K. The drafter of the deed to McCrearys had evidently considered that the county line was in the middle of a parkway now existing between 2 double lanes along the so-called Eight Mile road, one double lane of cement being for westbound traffic and the other double lane for eastbound traffic, whereas, in fact, the county line was in the center of the southerly (eastbound) traffic lane. The discrepancy was 53 feet.

In the county line was the starting point from which the distance to the corner of the lot in question was measured on Hubbell avenue, as per description in the deed to McCrearys.

The mistake was common as to several lots on Hubbell avenue and several years ago, by inter-

* See CL 1948, § 211.351 *et seq.* (Stat Ann § 7.951 *et seq.*).—RE-PORTER.

change of deeds and confirmatory court decree unknown to the McCrearys, was corrected as to several of other lots about which the same mistake had occurred.

The conclusion is clearly supported by the testimony that the public officials that had to do with the forfeiture to the State of title to the lands in question, all supposed that the taxes for which the title of McCrearys to lot K was forfeited to the State, were levied against the neighboring vacant lot.

Defendant Shields admits that she supposed the lot she bought was a vacant lot. The State sold for only $150 property worth $2,500 and never sought rent in the 5 years the State owned the title. It is clear that all 3, the State, the plaintiffs and defendant Shields all supposed until after the deed to Shields, defendant, that the title to the McCreary house had not been forfeited to the State.

The trial court evidently acted on the theory of a mutual (or common) mistake as to identity of the lot. The court did not question the absoluteness of a forfeiture to the State of the title to land for nonpayment of taxes.

The identity of the lot to which the forfeiture is, in equity, to be considered applicable, is the controlling question in the instant case. Not only are the equities in favor of plaintiff McCreary very strong, but the controlling facts claimed by her are clearly established and for the most part beyond controversy.

The trial court in effect awarded lot K to plaintiff McCreary, subject to the land contract to her co-plaintiffs, the Makies, and required repayment to defendant of the $150 which she paid the State as well as certain costs and expenses incidental to the transaction, a total of $337.63. The State has had its money and no reason is apparent why it should complain. Defendants did not object that the State

was not made a party. Defendant Shields has no just ground for complaint that she is not allowed to unjustly enrich herself out of the error common to all 3 parties interested, the State, the plaintiffs and defendant Shields.

"Doctrine of 'unjust enrichment' is that person shall not be allowed to profit or enrich himself inequitably at another's expense." *American University* v. *Forbes,* 88 NH 17 ([syllabus 6] 183 A 860).

"Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Hummel* v. *Hummel,* 133 Ohio St 520, 528 (14 NE2d 923).

"A constructive trust is imposed upon a person in order to prevent his unjust enrichment. To prevent such unjust enrichment an equitable duty to convey the property to another is imposed upon him." Restatement, Restitution, pages 642, 643.

"A constructive trust arises not from agreement but from operation of equities in order to satisfy demands of justice." *Union Guardian Trust Co.* v. *Emery* (syllabus 8), 292 Mich 394.

"Constructive trusts arise by operation of law, not by agreement or from intention, and are raised by a court of equity whenever it becomes necessary to prevent a failure of justice." *Digby* v. *Thorson* (syllabus 4), 319 Mich 524.

"Fraud is not necessary to give rise to a constructive trust, but if circumstances are such as to render it inequitable for the holder of the legal title to retain the same, the court may charge it with a trust in favor of the equitable owner." *Digby* v. *Thorson* (syllabus 2), 319 Mich 524.

On a bill in chancery to set aside sale of lands by State land office board, we have declared the board's grantees to be trustees *ex maleficio* holding title for

the benefit of defrauded party, for fraud preceding the State's acquisition of title. *Gulf Refining Co. v. Perry,* 303 Mich 487, 491, 492.

The instant case, so far as concerns defendant Shields, falls fairly within the rule as to unjust enrichment.

We do not intend by this opinion to reverse our rulings in *Darby v. Freeman,* 304 Mich 459, and *Lowrie & Webb Lumber Co. v. Ferguson,* 312 Mich 331.

Plaintiffs in their bill prayed that the court decree lot K to plaintiff McCreary and lot L to defendant Shields. Defendant Shields by her testimony disclosed that lot L is worth much more than the amount of $337.63 awarded to her by the decree appealed from.

The decree of the trial court awarded both lots K and L to plaintiffs and required the payment to defendant Shields of $337.63, as moneys paid by defendant.

For cases in which this Court has determined alternative remedies where parties by their common or mutual mistake as to the identity of property have acted to their detriment, we have in mind *Hardy v. Burroughs,* 251 Mich 578, in which we say, per syllabi:

"Owners of lot on which house was constructed by mistake should be given privilege of taking improvement at fair value or of releasing lot to builders at fair value.

"If owners of lot on which house was constructed by mistake refuse to take improvement or convey lot at fair value, conveyance to builders upon payment of fair value may be decreed."

Also, *Rzeppa v. Seymour,* 230 Mich 439, per syllabus 5:

"Where one builds a house on another's land by mistake, a court of equity does not follow the com-

mon-law rule denying all relief, but follows the more lenient rule of the civil law (CL 1915, § 13211 [CL 1948, § 629.44 (Stat Ann § 27.1957)]), and permits the owner of the land to elect whether to pay the value added to the land by the building, or take the value of the land."

The decree of this Court will award lot K to plaintiffs and will direct defendant to execute to plaintiffs a proper quitclaim deed thereof. In lieu of such execution this decree may be recorded in the office of the register of deeds of the county with like effect as though such deed had been executed and delivered. Said decree will further provide that defendant Shields shall receive the sum of $337.63, which amount may be deposited in the office of the county clerk by plaintiffs for defendant's benefit, or in lieu of such sum said defendant may at her option, to be exercised by filing a notice thereof in the office of the county clerk and serving a copy on the plaintiffs within 30 days after the filing of the decree of this Court, be entitled to receive from the said plaintiffs a quitclaim deed of lot L in proper form to permit it to be recorded.

Circuit court commissioner Cody was joined as a defendant in order that he might be enjoined from proceeding further with an ouster proceedings brought by defendant Shields. Such ouster proceedings should proceed no further.

Except as herein modified, the decree appealed from is affirmed. A decree will be entered in this Court in accordance with this opinion. No costs, neither side having in full prevailed.

Butzel, Carr, and Bushnell, JJ., concurred with Reid, J.

North, C. J., and Dethmers, J., concurred in the result.

Boyles, J. (*dissenting*). I am for reversal.

These 2 lots referred to by Mr. Justice Reid were described in the conveyances and of record by metes and bounds. Plaintiff McCreary admittedly was in open and continuous possession of the lot on which the house stands (now called "lot K") beginning with 1925 up to the present litigation. It may be conceded that she had acquired title to said house and lot by adverse possession, by 1940, as found by Justice Reid. But plaintiff has never acquired any record title by deed or otherwise. The taxes never have been paid on said house and lot and the State acquired the legal title therein by decree and State bid at a tax foreclosure sale in 1941. The title of the State became absolute, a new chain of title was started and all previous claims of interest or title therein were then extinguished. Plaintiff McCreary thereafter had no more interest or right in said property than a stranger. *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich 85; *Meltzer* v. *State Land Office Board,* 301 Mich 541. If, as stated by Mr. Justice Reid, said plaintiff became the equitable owner of said house and lot in 1925, and the legal owner thereof by adverse possession in 1940, said title, both equitable and legal, became and was extinquished when the title of the State became absolute in 1941. At the so-called scavenger sale in 1947, the State land office board sold and deeded said house and lot to defendant Shields. Mr. Justice Reid would now take away that record title from defendant Shields and decree it to plaintiff McCreary in exchange for plaintiff's title to the vacant lot which

all the time since 1925 has stood in the plaintiff. I do not agree with that conclusion.

Nowhere, since the State land office board act was passed, have we ever adjudicated a return of title to the former owner, from a purchaser at scavenger sale, solely on the ground that the equities were with the former owner. We have recognized that tax foreclosure decrees, and scavenger sales of State-owned land, often result in hardship to the former owner, but that is not ground for equitable relief. For the purpose of terminating the years of tax delinquency and with the purpose of turning tax delinquent lands over to taxpaying private owners with finality, we have uniformly held that a new chain of title was started.

Nor am I in accord with the view that the plaintiff McCreary in the instant case is without fault which if otherwise might entitle her to equitable consideration. In 1925 she and her husband took title to a vacant lot without determining whether the description in their deed covered the house and lot they intended to acquire. During more than 20 years while plaintiff was in possession, the owners of other lots in the same plat amicably straightened out like mistakes in their descriptions by exchanging deeds and by the entry of a consent decree in the circuit court in chancery. But it was not until after defendant Shields had acquired title to the house and lot in question by a deed from the State land office board in 1947 that the plaintiff took any steps toward obtaining a correct title. The plaintiff knew, or should have known, from her tax bills from 1929 to 1938 and other circumstances, that the house was not assessed as a part of the lot on which she was paying taxes. During that time McCreary paid only about one fourth as much taxes as she had previously been paying on a house and lot. It is not reasonable to believe that such a variance would pass unnoticed.

·Furthermore, plaintiff had actual notice that there was something wrong with her title and taxes. A tenant of the plaintiff's in the house and lot in question from 1940 to 1947 testified:

"Mrs. McCreary, the daughter, came to the house once, around 1940 or 1941. I had received a letter at that time addressed only by house number. It had something to do with the back taxes on the lot. I gave the letter to Mrs. McCreary and she stated she would look into the back taxes. She also remarked that the lot number wasn't the same but that she would look into it. This letter arrived sometime in 1940 or 1941."

We should also note that the published notice of hearing on the auditor general's petition and order of hearing for a chancery decree on foreclosure of taxes, in 1941, were equivalent to a personal service on McCreary. *Triangle Land Co.* v: *City of Detroit,* 204 Mich 442 (2 ALR 1526). Yet the plaintiff apparently paid no attention to those proceedings, nor to the proceedings under which the State land office board deeded the house and lot to defendant Shields. During that time, 1941 to 1947, inclusive, McCreary not only had lost all her right or title in the house and lot, but they were legally acquired under admittedly regular proceedings by defendant Shields. I do not agree that the equities are with the plaintiff McCreary.

Plaintiff for relief in equity relies solely on the claim of a mutual mistake. There was no mutual mistake as between McCreary and Shields, although there were other mistakes. The tax assessor made a mistake in sometimes assessing plaintiff's vacant lot on a valuation of a house and lot. Plaintiff made the mistake of accepting a deed on the wrong description, and in failing to ascertain the true situation during all the years when the taxes were not paid on

the house and lot in plaintiff's possession. Neither the auditor general nor the State land office board can be said to have made any mistake when a decree was entered foreclosing on the delinquent taxes unpaid on the house and lot, and in deeding that description over to the defendant at scavenger sale. The State foreclosed and deeded the proper description, on which the taxes had not been paid. The only mistake charged against defendant Shields seems to be that she thought she was buying a vacant lot but, instead, acquired the description of a house and lot.

However, it cannot be said that such was a mutual mistake as between McCreary and Shields when McCreary admits that she did not even know that defendant Shields had a deed until the proceedings started later by Shields before a circuit court commissioner. Equity does not relieve from a unilateral mistake of fact. The mistake must be mutual and common to both parties, and the proof thereof must be clear and satisfactory. *Emery* v. *Clark,* 303 Mich 461; *Holda* v. *Glick,* 312 Mich 394.

At the time when plaintiff's bill of complaint was filed, the record legal title to the vacant lot was, and still is, in McCreary. The legal title to the house and lot is in defendant Shields by virtue of the State deed. I am not in accord with Mr. Justice REID's conclusion that title to the house and lot should be taken from defendant Shields and turned over to plaintiff McCreary in exchange for a transfer of the title to the vacant lot from McCreary to Shields. The "option" thus extended to defendant Shields is that she convey to plaintiff the title to her lot by the execution and delivery of a deed of conveyance, or decline to do so and thereby be compelled to accept a decree to the same effect; in short, to give up the title to the lot which she has legally acquired from the State, by 1 of 2 different methods, by deed or by decree, and accept plaintiff's vacant lot, or $337.63

for a lot she now owns worth $2,500. The only ground for such a result, alleged in plaintiff's bill of complaint or discussed in her brief, is that there was a mistake. Not only must there have been a *mutual* mistake, but the evidence of such a mistake "ought to be so clear as to establish the fact beyond cavil." *Vary* v. *Shea,* 36 Mich 388, 398.

The decree of the trial court which Mr. Justice REID would affirm, except as modified, specifically reforms the deed by which the McCrearys obtained title in 1925, and also the deed whereby defendant Shields obtained title to her lot in 1947, by conveyance from the State. None of the grantors in these conveyances was made a party to the instant case, although the descriptions in their conveyances are specifically reformed by said decree.

In *Emery* v. *Clark, supra,* at 470–473, many decisions of this Court are gathered and considered which clearly establish the rule in this State, that to reform a written instrument the mistake must be mutual and common to both parties and the proof must be clear and convincing, "so clear as to establish the right to relief beyond cavil." *Schuler* v. *Bucuss,* 253 Mich 479.

"The evidence must be clear and convincing and must establish beyond cavil the right to reformation." *Sobel* v. *Steelcraft Piston Ring Sales, Inc.,* 294 Mich 211, 217.

Neither the bill of complaint nor plaintiff's brief filed here seek relief on the ground of unjust enrichment. Absent that claim, we should not base an opinion or enter a decree in the instant case on that foundation.

The decree of the court below should be set aside and the bill of complaint dismissed. Costs to appellant.

SHARPE, J., concurred with BOYLES, J.