# STATE OF MICHIGAN

# COURT OF APPEALS

---

ADLER STILMAN, PLLC

Plaintiff-Appellant,

v

OAKWOOD HEALTHCARE, INC., and STATE
FARM MUTUAL AUTOMOBILE INSURANCE
ASSOCIATION,

Defendants-Appellees.

UNPUBLISHED
February 13, 2018

No. 333538
Wayne Circuit Court
LC No. 16-003850-NZ

---

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

GLEICHER, J. (*dissenting*).

Under the American Rule, litigants pay their own attorney fees. The rule provides that unpaid fees may be recovered only though a contract enforcement action. But there are statutory and equitable exceptions. This case presents an equitable exception.

Plaintiff, a law firm, sued defendants, raising an equitable claim for attorney fees. The majority opinion ignores plaintiffs' equity argument, holding that because the law firm had no contract with defendants, its claim for fees is foreclosed. The majority's analysis overlooks a longstanding principle of Michigan law permitting fees when an attorney's work benefits a nonclient. In my view, that principle supports that plaintiff has established an equitable basis for an attorney fee. I respectfully dissent.

I

Ronald Reese, an independent truck driver, was injured while unloading a trailer owned by Joseph Renkiewicz or a company Renkiewicz controlled. Defendant Oakwood Healthcare, Inc. provided Reese's medical care. Reese had no personal medical or no-fault coverage. He incurred over $100,000 in medical expenses. Oakwood billed Reese for these charges, and initiated an effort to procure Medicaid coverage for him.

Three months after Reese's accident, Barry Adler, Reese's attorney, wrote to Oakwood, advising that he was looking for insurance coverage for Reese and intended to "charg[e] your facility a fee for collecting this money on his behalf." Oakwood did not respond.

Adler undertook an intensive search for coverage. He sought workers compensation benefits, only to conclude that Reese was an independent contractor who was not entitled to these benefits. Adler then looked for no-fault coverage, but Reese owned no vehicle and Renkiewicz strenuously evaded Adler's multiple attempts at contact. Adler searched insurance databases and hired an investigator to determine whether Renkiewicz had insured the truck or trailer, but to no avail. When it became clear that no insurance policy covered Reese, Adler submitted an application for benefits to the Michigan Assigned Claims Plan (MACP). The MACP refused to assign Reese's claim to an insurer, forcing Adler to file a lawsuit against the plan. The suit also named Renkiewicz and several of his companies as defendants. MACP then assigned Reese's claim to State Farm. At that point, Oakwood intervened in the litigation, asserting that it had retained its own counsel. Oakwood disclaimed Adler's right to any attorney fees for work he had performed on Oakwood's behalf.

State Farm denied coverage. It claimed that Reese owned the uninsured trailer, disqualifying him from no-fault benefits. The fuel for this argument came from Renkiewicz, who had created a forged ownership document to avoid his own liability for failing to insure the trailer. Adler hired an expert who exposed the fraud, leaving State Farm without a defense. Case evaluation brought about a successful end to the suit for Reese and Oakwood. The award allocated $93,500 to Oakwood, representing 90% of its bill; Reese got $99,000. All parties accepted the case evaluation award, and the matter resolved.

After judgment entered in Reese's case, Adler's law firm sued Oakwood and State Farm. The three-count complaint alleges that State Farm and Oakwood violated the firm's charging lien (Counts I and II), and that Oakwood was unjustly enriched by the firm's efforts, entitling the firm to restitution for the benefit it conferred. Essentially, Adler asserts that he performed the vast majority of the legal work while Oakwood sat back and went along for the ride. In lieu of an answer, Oakwood and State Farm filed motions for summary disposition under MCR 2.116(C)(8) and (C)(10). Oakwood contended that it had not retained Adler, had no agreement with Adler, and that it would be "unethical" for Adler to recover any fee. Because Oakwood hired its own counsel to intervene in Reese's lawsuit and obtained its own case evaluation award, Oakwood argued that Adler had no right of recovery under a "common fund" theory either. State Farm agreed. The circuit court adopted Oakwood's reasoning and granted summary disposition to defendants.

II

The majority opinion focuses on plaintiff's charging lien claim, dispensing with it by citing multiple authorities for the singular proposition that "[a]n attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995). I agree that most of the time, a charging lien arises from an attorney-client relationship, and that plaintiff's claim to a charging lien in this case should fail. But that conclusion does not end the case and should not have ended the majority's analysis.

Plaintiff's pleadings in the circuit court and on appeal have preserved a claim for an equitable remedy in the nature of restitution. In one respect, restitution is really nothing more than an equitable surrogate for contract damages. Professor Dan B. Dobbs has described

restitution as a restoration required to prevent unjust enrichment. Dobbs, *Law of Remedies: Damages – Equity – Restitution* § 4.1(2), at 371 (2d ed, 1993). Michigan law recognizes this remedy. "Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' " *Kammer Asphalt Paving Co, Inc v E China Twp Schs*, 443 Mich 176, 185; 504 NW2d 635 (1993) (citation omitted). Indeed, as the Supreme Court pointed out in *Kammer*, the restorative remedy known as restitution "is one by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained." *Id*. at 185-186 (quotation marks and citations omitted).[1]

The legal theory under which Adler's complaint seeks restitution for the time and costs he expended in finding coverage for Reese is unjust enrichment. "Unjust enrichment . . . is the equitable counterpart of a legal claim for breach of contract." *AFT Mich v Michigan*, 303 Mich App 651, 677; 846 NW2d 583 (2014). The claim arises when a party " 'retains money or benefits which in justice and equity belong to another.' " *Id*., quoting *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952). " '[I]n order to sustain a claim of . . . unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.' " *AFT Mich*, 303 Mich App at 677-678, quoting *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006) (alterations in original).

The twin doctrines of unjust enrichment and restitution apply to the recovery of attorney fees as well as other benefits. The United States Supreme Court recognized this application of this form of equity in *Mills v Elec Auto-Lite Co*, 396 US 375, 391-392; 90 S Ct 616; 24 L Ed 2d 593 (1970):

> While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. . . . To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

---

[1] Restitution is the name of a remedy for unjust enrichment. "The restitutionary remedies and unjust enrichment are simply flip sides of the same coin." *Alternatives Unlimited, Inc v New Baltimore City Bd of Sch Comm'rs*, 155 Md App 415, 454; 843 A2d 252 (2004). See also Restatement, 2d, Restitution & Unjust Enrichment, § 1 cmt c (recognizing that there are differences between unjust enrichment and restitution but explaining that " 'restitution' and 'unjust enrichment' will generally be treated as synonymous" in certain contexts).

In *Mills*, the Supreme Court acknowledged that "the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund,' for the benefit of a group"; the cases did not hold that a "suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses." *Id*. at 393. As to the costs of litigation, the Supreme Court explained, the rule has always permitted a court "to do equity in a particular situation." *Id*. (quotation marks and citation omitted).

The Michigan Supreme Court has not only adopted *Mills*' reasoning, but cited approvingly exactly the same primary passage as appears above. *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson*, 406 Mich 497, 503-504; 280 NW2d 457 (1979). The Supreme Court further expounded in *In re Attorney Fees of Kelman* that "[t]he exception [to the American Rule] is available when a fund is created, preserved or protected." *Id*. at 504.

In *In re Attorney Fees of Kelman*, a law firm successfully represented a class of disabled workers in a mandamus action against the Workmen's Compensation Bureau involving the computation of weekly benefit rates. *Id*. at 499-500. The law firm's efforts yielded an additional dollar per week in benefits for each class member, which amount the Supreme Court determined "can be cumulated into a 'fund.' " *Id*. at 504. The Supreme Court remanded the case to the Workmen's Compensation Bureau for an evaluation of "the fee the firm should receive," recognizing that a worker-by-worker determination "would be self-defeating, since the total benefits in each individual case could not justify expenditure of the firm's time to file a petition and would certainly place a monumental task on an already overburdened board." *Id*. at 506.

Technically, the common *fund* exception to the American Rule embodied in *In re Attorney Fees of Kelman* and the common *benefit* exception exemplified in *Mills* are separate and distinct equitable creatures. But they share a common foundational premise: "the equitable notion that persons benefitting from a suit should pay their proportionate share of the cost of the litigation." 10 Moore's Federal Practice 3d, § 54.171[2][b][iii], p 54-281.

In a factual context strikingly similar to case at hand, this Court found that an attorney's efforts in a no-fault case had created a common fund, and held that a hospital (the Detroit Medical Center) was obligated to reimburse the plaintiff's counsel for his efforts in obtaining a recovery that benefitted the claimant as well as the DMC. In *Miller v Citizens Ins Co*, 288 Mich App 424, 437-438; 794 NW2d 622 (2010), aff'd in part and rev'd in part on other grounds 490 Mich 905; 804 NW2d 740 (2011), this Court reiterated that an exception to the "American rule" exists when the party prevailing in an action secures a "common fund" for the benefit of that party as well as others, such as medical providers who give care to a no-fault beneficiary:

> Further, it appears to us that, with regard to the payment of plaintiff's attorneys' fees, an equitable, common-law exception to the American rule applies. See *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 37-38; 576 NW2d 641 (1998), citing *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 473-474; 521 NW2d 831 (1994). That exception is the common-fund exception. This exception "only applies when a prevailing party creates or protects a common fund that benefits himself and others." *Nemeth*, 457 Mich at 38 n 11; see, also, *Popma*, 446 Mich at 475. [*Miller*, 288 Mich App at 437.]

We emphasized in *Miller* that the rationale for the common-fund exception is rooted in equity: the notion that it is unfair for the nonparty beneficiaries of the common fund to sit back, do nothing, and benefit from the prevailing party's efforts without sharing in the costs of those efforts:

> This exception is premised on the equitable principle that it is "unfair to allow others to benefit at the expense of the prevailing party without contribution to the costs incurred in securing the common fund." *Nemeth*, 457 Mich at 38 n 11. . . . An insured plaintiff who prevails in a litigation against the plaintiff's insurer secures payment not only for the plaintiff's benefit, but for the benefit of the plaintiff's medical providers, which were at risk of either not being paid or of receiving a smaller fraction of their billed amounts for their services. [*Miller*, 288 Mich App at 437-438.]

Notably, we also observed in *Miller* that a provider not wishing to pay one-third of the funds recovered on its behalf to an insured's attorney could pursue its own claim, intervene, instruct the insured's attorney not to pursue a claim on its behalf, or notify the insurer that the insured's attorney does not represent the provider's interests:

> The [provider] could have pursued a claim on [the injured party's] behalf or intervened in this litigation after it was commenced, but [the provider] did not. The [provider] could have advised plaintiff's attorneys not to pursue payment for its services or advised [the insurer] that plaintiff's attorneys did not represent its interests, but the [provider] did neither. [*Id.* at 438 (citation omitted).]

The Supreme Court granted leave to appeal in *Miller* and ultimately issued an order affirming in part and reversing in part this Court's opinion. *Miller v Citizens Ins Co*, 490 Mich 904 (2011). The Supreme Court did not disturb this Court's rationale regarding the common-fund exception. Instead, it held that there was no common fund in *Miller* because, "through settlement, the benefits were paid to plaintiff, and her attorney asserted an attorney's charging lien over the settlement proceeds. Thus, the effect of this was only to settle claims as between the insurer, plaintiff, and her attorney." *Id.*[2]

I am not entirely sure of the meaning or import of the terse order in *Miller*. Supreme Court orders constitute binding precedent to the extent they can be understood as having a holding based on discernible facts and reasoning. *Evans & Luptak, PLC v Lizza*, 251 Mich App

---

[2] The majority's "incidental benefit" analysis simply cannot be squared with this Court's opinion in *Miller*, or the Supreme Court's order. Neither this Court nor the Supreme Court has ever embraced an "incidental benefit" analysis in similar circumstances; to the contrary, this Court acknowledged that the common fund created by a prevailing plaintiff "secures payment not only for the plaintiff's benefit, but for the benefit of the plaintiff's medical providers," and pointed out that but for the plaintiff's efforts, the medical providers either would have gotten nothing or far less. *Miller*, 288 Mich App at 438. The Supreme Court did not disturb this aspect of this Court's opinion.

187, 196; 650 NW2d 364 (2002). The *Miller* order's facts and reasoning are not discernable to me, even after an attempt at correlation with the facts recited in this Court's opinion. One explanation for the Supreme Court's rejection of a common fund argument in *Miller* is that the DMC did not issue any bill for its medical services until *after* the parties had settled the case, unlike here where before a suit was filed, Oakwood had billed Reese for more than $100,000. Because the plaintiff in *Miller* had not incurred any medical expenses*,* the Supreme Court's finding that no common fund had been created for the benefit of DMC is factually distinguishable. In other words, the settlement in *Miller* could not have taken into account bills that the DMC never issued. Here, the bills existed, formed a central part of the damages sought in the lawsuit, and were substantially recovered thanks to the litigation that Adler spearheaded.

I readily acknowledge another important distinction. After Adler had done most of the work needed to secure no-fault coverage for Reese, Oakwood obtained its own counsel and disavowed Adler's help. But Adler has made a compelling case that he nevertheless conferred a valuable benefit on Oakwood by aggressively pursuing coverage, by initiating the lawsuit that yielded the coverage, and by taking charge of (and funding) the discovery and the litigation that led to the settlement. This Court has described the elements of a claim for unjust enrichment as: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). Adler has established both.[3]

Oakwood's rejoinder to Adler's unjust enrichment claim is that compensating him would be "unethical" under State Bar Formal Ethics Opinion C-226, issued in 1982, because Adler had no attorney-client relationship with Oakwood. Oakwood has misinterpreted the Ethics Opinion. Actually, the Opinion permits an attorney to take a fee under the common-fund exception:

> It is unethical for a lawyer to charge a hospital a fee for medical payments voluntarily paid by a client's no-fault insurance carrier under circumstances where no lawyer-client relationship exists between the hospital and the lawyer.

> It is not unethical for a lawyer to charge a hospital a reasonable fee for medical payments involuntarily paid by the client's no-fault insurance carrier even if there is no express lawyer-client relationship between the hospital and the lawyer, provided that the hospital is first notified in writing of the lawyer's contemplated legal action, giving the hospital a reasonable opportunity to advise the lawyer that it wishes to pursue its interests in the matter without the assistance of the lawyer's legal service. [State Bar Ethics Opinion C-226 (1982).]

---

[3] Other courts have considered whether an insurance company's retention of counsel eliminates any application of the common-fund doctrine. In *Ex Parte State Farm Mut Auto Ins Co*, 118 So3d 699, 709-710 (Ala, 2012), the Alabama Supreme Court held that merely appearing as an intervenor did not suffice. See also the cases cited *id*.at 710 n 5. The extent of Oakwood's participation in this case is not well-developed in the record.

The second paragraph describes this case.

The opinion also highlights that "there is a distinction between benefits 'voluntarily' paid and benefits 'involuntarily' paid." *Id.* "Involuntary" payment is defined as payment made only after a "lawyer is compelled to extend considerable professional service on the client's behalf, which efforts result in the payment of damages by the carrier, including a recovery for expenses incurred by the hospital on the client's behalf." *Id.* In language particularly relevant here, the Opinion continues:

> In the case of involuntary payment, the hospital assumes the appearance of a third-party beneficiary of the lawyer's time and effort. In this case it would not be unreasonable or unethical to permit the lawyer to charge the hospital a reasonable fee in the absence of an express lawyer-client agreement, provided that the hospital is first notified in writing of the lawyer's contemplated legal action which is likely to benefit the hospital, and the hospital is given a reasonable opportunity to advise the lawyer that it wishes to pursue its interests in the matter without the lawyer's assistance. [*Id.*]

Here, Adler notified Oakwood that he had embarked on a hunt for coverage that would likely benefit Oakwood. Oakwood said nothing. Adler persevered. After suit was filed, Oakwood obtained counsel and intervened. Should Adler be precluded from seeking any compensation for the efforts he made after Oakwood hired counsel? Maybe. I would leave this question to the parties and the circuit court to explore, factually and legally.[4]

Adler's complaint seeks nothing more than an equitable determination of whether his efforts created a benefit for Oakwood that, absent his efforts, Oakwood would not have realized. I would find such a determination to fall within a court's equitable power. Adler's extensive legal work appears to have helped vindicate Oakwood's rights under the No-Fault Act. The

---

[4] Contrary to the majority's concerns about a "mini-trial," fee hearings are commonplace and involve precisely the same proofs as would be involved here. Trial courts routinely evaluate billing records, hours, and calculate an attorney's contribution to a result. There is nothing "imprudent" about this sort of analysis. See *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), and *Pirgu v United States Auto Assoc*, 499 Mich 269; 884 NW2d 257 (2016), as examples of the types of factual attorney-fee determinations expected of trial courts, which involve questions identical to those presented here.

degree to which the benefit realized by Oakwood was attributable to Adler rather than Oakwood's own counsel is unknown. The legal parameters remain to be fleshed out. I would remand for an evidentiary hearing on those questions.[5]


/s/ Elizabeth L. Gleicher

---

[5] Likely this case is a factual outlier due to the profound difficulties Adler faced in locating no-fault coverage for Reese. But it may herald future disputes involving unpaid medical providers. Here, Oakwood was allowed to intervene in Reese's suit against the MACP. As a party, Oakwood was entitled to participate in case evaluation and to receive a case evaluation award. Oakwood's ability to intervene disappeared when the Supreme Court decided *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 217; 895 NW2d 490 (2017), holding that healthcare providers do not possess a statutory cause of action against no-fault insurers. Citing its order in *Miller*, the Court elaborated: "This does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." In the future, healthcare providers may have little alternative but to work closely with claimants' attorneys to recoup expenses. Whether claimants' attorneys will gratuitously provide their legal services to create a benefit for providers remains to be seen.