MILLER v CITIZENS INSURANCE COMPANY

Docket No. 290522. Submitted May 4, 2010, at Detroit. Decided May 13, 2010, at 9:15 a.m.

Gail Miller, guardian and conservator for Ryan S. Miller, a mentally and physically incapacitated adult, brought an action in the Macomb Circuit Court against Citizens Insurance Company and April Buerkel, an employee of Citizens, seeking, in part, no-fault motor vehicle insurance benefits for injuries Ryan received in a motor vehicle accident. Citizens had denied plaintiff's application for such benefits following the accident. The parties reached a settlement, and the trial court, Matthew S. Switalski, J., entered a stipulated order of dismissal that settled the matter except, in part, with regard to the entitlement of plaintiff's attorneys to an attorney lien. The court ordered plaintiff to give notice to Ryan's medical providers to appear at a scheduled conference to settle the attorney fee issue. Thereafter, one of the providers, Detroit Medical Center (DMC), moved to intervene as a plaintiff, which the trial court denied. Following further proceedings, plaintiff filed a motion regarding distribution of the no-fault benefits. The trial court then entered an opinion and order denying plaintiff's request that the DMC be paid only $66,200, which is the amount that it would have received from Medicaid for the services it provided, rather than the total amount of its bill, $150,660.51. The trial court also ordered that plaintiff's attorneys were entitled to a reasonable percentage of the DMC's recovery and that ⅓ of the DMC's recovery was a reasonable percentage as attorney fees. The DMC appealed, alleging that the trial court erred by holding that plaintiff's attorneys were entitled to have attorney fees deducted from the payment the DMC earned by providing services to Ryan. Plaintiff cross-appealed, challenging the DMC's right to appeal as well as the amount that the DMC was allocated from the settlement proceeds for the services it provided.

The Court of Appeals held:

1. Plaintiff's attorneys were entitled to fees for the legal services they provided on behalf of plaintiff as a consequence of the contingency fee agreement between plaintiff and the attorneys in which the attorneys agreed to accept as payment for their services

⅓ of the amount of monies recovered on Ryan's behalf. Moreover, pursuant to the contingency fee agreement, plaintiff's attorneys had a right to be paid for their services from the amount recovered from Citizens. The trial court did not abuse its discretion by awarding plaintiff's attorneys the fees provided for in the contingency fee agreement.

2. The "common-fund exception," an equitable, common-law exception to the American rule regarding the payment of attorney fees, applied in this case. The exception is premised on the equitable principle that it is unfair to allow others to benefit at the expense of the prevailing party without contribution to the costs incurred in securing the common fund. Therefore, plaintiff's attorneys rightfully secured a charging lien against the settlement proceeds—or common fund—pursuant to their contingency fee contract.

3. The fact that the DMC's bill for the services it provided to Ryan was not overdue at the time the settlement was reached was of no consequence in this case.

4. The DMC was an "interested person" with regard to the apportionment of its bill for services rendered to Ryan. Because the DMC contested the right of plaintiff's attorneys to have their fees deducted from the amount of the DMC's billed services, the trial court properly required the DMC to appear in court to settle the attorney fee issue. The trial court did not err by providing the DMC a forum in which to contest and resolve the matter. The Court of Appeals did not lack jurisdiction over the appeal by the DMC.

5. The trial court properly denied plaintiff's request that the DMC only receive the amount that it would have received from Medicaid. The DMC's challenge to the apportionment of the common fund was made in good faith and did not warrant punitive action.

Affirmed.

1. ATTORNEY AND CLIENT — CHARGING LIENS FOR ATTORNEY FEES.

An attorney's charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit; the charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services.

2. ATTORNEY AND CLIENT — ATTORNEY FEES — AMERICAN RULE — COMMON-FUND EXCEPTION.

The common-fund exception is a common-law exception to the American rule, which provides that, generally, each litigant must

pay its own attorney's fees, even if the party prevails in the lawsuit; the common-fund exception only applies when a prevailing party creates or protects a common fund that benefits the prevailing party and others; the common-fund exception is premised on the equitable principle that it is unfair to allow others to benefit at the expense of the prevailing party without contribution to the costs incurred in securing the common fund.

*Thomas, Garvey, Garvey & Sciotti, P.C.* (by *James McKenna*), for Gail Miller.

*Charles N. Raimi* and *Miller & Tischler, P.C.* (by *Mark Schreier*), for the Detroit Medical Center.

Before: CAVANAGH, P.J., and O'CONNELL and WILDER, JJ.

CAVANAGH, P.J. The Detroit Medical Center (DMC), an aggrieved party, appeals as of right an order granting attorney fees to plaintiff's attorneys that had the effect of proportionately reducing the amount the DMC recovered for billed services in this no-fault motor vehicle insurance case. We affirm. Plaintiff cross-appeals, challenging the DMC's right to participate in this matter, as well as the amount the DMC was allocated from the settlement proceeds for services it provided. We affirm.

On December 17, 2007, plaintiff Gail Miller, as guardian and conservator for Ryan Scott Miller, a mentally and physically incapacitated adult, filed a lawsuit against defendants, Citizens Insurance Company and April Buerkel, an employee of Citizens. The complaint alleged that on September 5, 2007, Ryan was in a rollover motor vehicle accident from which he sustained severe and permanent injuries, including a spinal cord injury that rendered him a paraplegic, a severe closed head injury, multiple facial fractures, multiple broken ribs, and multiple fractures of vertebrae. The vehicle involved in the accident was owned by Ryan's father

and was insured by Citizens; thus, an application for no-fault benefits dated September 13, 2007, was submitted to Citizens on Ryan's behalf. The application indicated that Ryan had no other medical insurance coverage. On November 7, 2007, Citizens responded to the application for benefits by rescinding the insurance policy, claiming that in May 2002, a representation was made that the vehicle at issue would not be used for business purposes and that the representation was false. By letter dated November 9, 2007, Citizens denied Ryan's application for no-fault benefits.

The complaint was filed after the failed efforts by plaintiff's attorneys to convince Citizens that Ryan—an innocent third party—was entitled to no-fault benefits. Count I was a breach of contract claim, count II was a common-law fraud and misrepresentation claim, count III was a fraudulent concealment claim, count IV was a silent fraud claim, count V alleged a violation of the Consumer Protection Act, MCL 445.901 *et seq.*, count VI was an estoppel claim, count VII alleged a violation of the Uniform Trade Practices Act, MCL 500.2001 *et seq.*, count VIII was a conspiracy and fraud claim, and count IX requested exemplary damages.

On January 11, 2008, plaintiff filed a motion for a preliminary injunction under MCR 3.310(A), requesting that Citizens be ordered "to immediately begin payment of Plaintiff's no-fault benefits for his care, rehabilitation and recovery that are reasonable, necessary and related to this automobile accident." Attached to the motion was a letter dated January 9, 2008, authored by a nurse case manager from Alpha Case Management who had been appointed on Ryan's behalf, which detailed the severity of Ryan's injuries as well as his future, extensive medical needs. Because of the extent of Ryan's mental and physical injuries, place-

ment in residential rehabilitation was discussed but, the letter indicated, such placement "will not be possible if he does not have insurance coverage as no appropriate TBI/spinal cord injury facility will admit Ryan without proof of payment." Citizens opposed plaintiff's motion.

On January 22, 2008, a stipulated order of dismissal pursuant to settlement was entered by the trial court. The order indicated that jurisdiction was retained only "for the sole limited purpose of settlement of any attorney liens for personal protection benefits accrued to date." The order also provided that count I was dismissed without prejudice with regard to the personal protection insurance benefits payable as alleged in count I, but with prejudice with regard to interest and attorney fees owing under count I. Counts II through IX were dismissed with prejudice. Citizens was ordered to pay all allowable expenses accrued between September 5, 2007, and January 22, 2008, as well as those personal protection insurance benefits that followed to the extent required by the no-fault act. With regard to plaintiff's attorneys' entitlement to an attorney lien, the court ordered plaintiff to provide notice to providers to appear at a scheduled conference to settle the attorney liens.

On February 11, 2008, the conference was held, and legal representation for the DMC was present. The DMC argued that it had not received notice of the litigation until after it was settled. The trial court ordered an evidentiary hearing to be conducted with regard to the issue. The court further ordered Citizens to make payment to the other providers and that those providers were subject to an attorney lien of 1/3 of their invoices.

On February 15, 2008, the DMC moved to intervene as a plaintiff pursuant to MCR 2.209. The DMC averred

that it had provided medical, surgical, and rehabilitative services to Ryan at a cost of approximately $150,651 from December 4, 2007, through January 25, 2008. The DMC averred that plaintiff's attorneys were seeking from the DMC a payment of ⅓ of its charges as attorney fees, but the DMC had no such agreement with plaintiff's attorneys. The DMC also contended that "Plaintiff's counsel did not provide it with appropriate notice of his representation, did not advise it of his intention to pursue Intervening Plaintiff's interests and claim a one-third fee, and did not provide it an opportunity to retain its own counsel." On February 19, 2008, plaintiff responded to the DMC's motion to intervene, primarily arguing that there was no pending action in which to intervene—the matter had been settled by order entered on January 22, 2008. Following a hearing, the trial court denied the motion to intervene.

On March 14, 2008, an evidentiary hearing was conducted. The only witness was Jane Ruppman, the director of patient business services at Rehabilitation Institute of Michigan (RIM), the DMC hospital where Ryan received medical treatment. On direct examination, she testified that patients or third-party payers do not receive a bill for services while still in the hospital, but only after discharge. With regard to Ryan, she had only spoken with an attorney for plaintiff on January 22, 2008, when he called to advise that he had secured insurance proceeds from Citizens and sought ⅓ of the $150,000 outstanding balance as his fee. That was her first contact with plaintiff's attorneys. She then received a letter from plaintiff's attorneys dated January 24, 2008, regarding their legal representation and claim for ⅓ of the bill as their fees. Ryan was discharged on January 25, 2008. On February 12, 2008, a bill was submitted to Citizens, and payment was denied.

On cross-examination, Ruppman testified that she held a supervisory position and had no personal involvement with Ryan's billing or anything else related to his hospitalization. She testified that when Ryan was admitted, a lien was not sought. She knew that if Ryan were eligible for Medicaid, Medicaid would pay approximately $1,324 a day. The actual bill for Ryan's care was $150,000—which is about $3,000 a day for 50 days. If Ryan were not eligible for insurance coverage or Medicaid, he would be billed, and liable, for RIM's medical services. On the back of the Medicaid application, which was signed on the day Ryan was admitted, someone had written the names and telephone numbers of Ryan's two attorneys. Thus, Ruppman admitted, at least as of December 4, 2007, according to the DMC's documents, the DMC was aware of plaintiff's attorneys.

Ruppman also testified that before Ryan was admitted to RIM, a RIM employee, Kathleen Clawson, went to see him to determine if he qualified for care at RIM. Ruppman was aware that Clawson had testified in her deposition that she first had contact with plaintiff's attorneys on November 29, 2007, a week before Ryan was admitted to RIM. As of that date, the DMC was aware that Citizens had denied coverage to Ryan and that attorneys were pursuing this matter on Ryan's behalf. Ruppman admitted that she never interviewed RIM or DMC employees who had direct contact with plaintiff's attorneys, Ryan's family, or Ryan's case manager. There were also documents in Ryan's file, including documents from other medical providers, that identified Ryan's attorneys by name and telephone number. Further, on December 13, 2007, the DMC received a request from plaintiff's attorneys for billing information. Ruppman admitted that the DMC did not contact or send a lien notice to Citizens. And, when the bill was sent to Citizens, the DMC did not advise it to pay the

DMC directly or not to pay plaintiff's attorneys. The DMC also did not contact plaintiff's attorneys or advise them that it did not want them to pursue this matter on its behalf or that their services were not wanted with regard to this matter. Ruppman further testified that the DMC used to send a form letter that advised those persons inquiring about outstanding medical bills not to collect money on its behalf, but the DMC stopped doing that because the postage was expensive and "it didn't work"—liens were still filed and the DMC still had to retain counsel.

On October 1, 2008, the trial court issued an opinion and order, holding that, assuming without deciding that the DMC was entitled to notice, the "DMC had abundant notice that Ryan Miller had counsel who was pursuing these claims." The court noted that the DMC, through its employees, was aware that plaintiff had counsel on November 29, 2007, and was also aware on that date that Citizens had denied insurance coverage. Further, on December 13, 2007, plaintiff's attorneys had requested copies of bills for Ryan's care. In spite of this knowledge, the DMC did not take any measures before plaintiff's attorneys obtained insurance proceeds to inform them to cease and desist any efforts on behalf of the DMC.

On October 6, 2008, plaintiff moved for distribution of no-fault benefits payments. Plaintiff requested that the court order Citizens to pay plaintiff all monies owed to the DMC. Plaintiff further requested that, pursuant to the equitable provisions of MCL 500.3112, the DMC receive only $66,200, which was the same amount that the DMC would have received from Medicaid. Plaintiff argued that the DMC

> should not receive a windfall for contesting a settlement that was agreeable to every other provider of medical care

and treatment to the Plaintiff and then causing Plaintiff to incur additional expenses, costs and attorney fees as a result of their challenging the settlement that was agreeable to everyone but themselves.

The DMC opposed the motion, arguing that it was a creditor and Ryan a debtor. At the time the case was settled between plaintiff and Citizens, the DMC had not even issued a bill for its services and plaintiff's attorneys were not the DMC's attorneys. Further, the DMC argued, a hearing to determine the reasonableness of the requested attorney fees was required.

On February 3, 2009, the trial court entered an opinion and order denying plaintiff's request that the DMC be paid only $66,200, rather than its bill of $150,660.51, on the ground that it was a good-faith litigation for which the DMC should not be punished. The order also provided that plaintiff's attorneys were entitled to their reasonable percentage of the DMC's recovery, which was 1/3 of that recovery. The court held that no further hearing was necessary, because the fees were reasonable.

On February 12, 2009, the DMC moved to stay payment of the attorney fees or for other relief from the February 3, 2009, order. Plaintiff opposed the motion. On February 23, 2009, the trial court entered an order denying the motion and ordering that Citizens issue a check in the amount of $102,506.94 to the DMC and a check in the amount of $48,153.57 to plaintiff's attorneys.

On February 24, 2009, the DMC filed its claim of appeal in this Court. On February 25, 2009, the DMC filed in this Court a motion for a stay of proceedings, which was denied. *Miller v Citizens Ins Co*, unpublished order of the Court of Appeals, entered February 27,

2009 (Docket No. 290522). On March 17, 2009, plaintiff filed a claim of cross-appeal.

On appeal, the DMC argues that the trial court erred by holding that plaintiff's attorneys were entitled to have attorney fees deducted from the payment the DMC earned by providing services to Ryan. We disagree. Issues of statutory interpretation are reviewed de novo as questions of law. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008). We review the amount and the award of attorney fees for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes. *Id.*

First, the DMC argues that plaintiff's attorneys were not entitled to fees "from no-fault benefits earned by the DMC when no attorney-client relationship existed between them." This argument is without merit. The dispositive attorney-client relationship that entitled plaintiff's attorneys to fees for representing plaintiff in this no-fault breach of contract action against Citizens was the attorney-client relationship that existed between plaintiff and her attorneys. And plaintiff's attorneys were entitled to fees for legal services provided on behalf of plaintiff as a consequence of the contingency fee agreement that existed between them.

MCL 500.3112 provides that "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person . . . ." And MCL 500.3142 provides that such benefits are payable as loss accrues. In this case, plaintiff's application to Citizens for no-fault insurance benefits was denied. At that time, Ryan was receiving medical care for extensive injuries he sustained in the automobile accident at issue. In the absence of insurance or other medical coverage, he would be personally

liable for those medical expenses. Thus, attorneys were retained to represent Ryan's interests against Citizens and to challenge the denial of his application for no-fault insurance benefits. It appears that a typical contingency fee contract was entered into by which plaintiff's attorneys agreed to accept as payment for their services ⅓ of the amount of monies, if any, recovered on Ryan's behalf.

Thereafter, a lawsuit was filed, which included a breach of contract action premised on Citizens' refusal to pay personal protection insurance benefits, including to Ryan's health-care providers. From the record evidence it appears that, before Ryan was admitted to RIM, on or about November 29, 2007, RIM was aware that Citizens had refused Ryan's application for no-fault benefits and that Ryan had attorneys who were pursuing legal action in that regard. RIM admitted Ryan as a patient on December 4, 2007, and the lawsuit was filed on December 17, 2007. The record is undisputed that the DMC never advised plaintiff, or plaintiff's attorneys, not to pursue insurance proceeds for the payment of its medical services. And although the DMC in past instances had pursued its own claims against automobile insurance providers, it had not done so in this case.

Consequently, when settlement negotiations commenced between plaintiff's attorneys and Citizens regarding the no-fault case, plaintiff's attorneys sought payment for the medical services RIM provided to Ryan. Although at the time Ryan was still a patient at RIM, he was already liable for the cost of the medical services that RIM had provided and that had accrued to that date. The matter was successfully settled. By settling plaintiff's lawsuit, Citizens was relieved of the risk of having penalty interest and penalty attorney fee sanctions imposed on it for failing to provide personal

protection insurance benefits from the date that Ryan sustained his injuries through the settlement date. Citizens also did not have to defend against the other eight counts contained in plaintiff's complaint. By operation of the settlement, Ryan's medical providers did not have to establish that their charges for services provided to Ryan were reasonable under MCL 500.3157. Apparently, plaintiff's attorneys were able to prove to Citizens' satisfaction that such charges were indeed reasonable.

The settlement that plaintiff's attorneys eventually reached with Citizens created, in effect, a common fund that would benefit not only Ryan, but his medical providers, which had not sought to litigate or pursue their own right to payment through legal action. Under MCL 500.3112, each medical provider could have brought an action or intervened in this action against Citizens. See *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*, 250 Mich App 35, 39; 645 NW2d 59 (2002). None did, and thus they were spared the expense of litigating their own claims. Thus, as is customary, plaintiff's attorneys sought to negotiate with Ryan's medical providers, in effect, a reduction in their bills proportionate to the amount of the fees that plaintiff agreed to pay her attorneys for pursuing the legal action against Citizens. All providers agreed to accept as payment in full ²/₃ of the amount of their billed services except the DMC. The DMC claims, in essence, that it does not have to pay for plaintiff's attorneys' fees associated with securing payment for medical services the DMC provided to Ryan—the DMC had no contract to pay such fees. But plaintiff had a contract that provided for such payment.

As this Court noted in *Aetna Cas & Surety Co v Starkey*, 116 Mich App 640; 323 NW2d 325 (1982), the

existence of an attorney's charging lien is recognized in Michigan at common law. *George v Sandor M Gelman, PC*, 201 Mich App 474, 477; 506 NW2d 583 (1993). A charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Id.* at 476. "The attorney's charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id.*

Specifically, in *Aetna Cas & Surety Co*, medical providers submitted their bills for services provided to an automobile accident victim directly to the insured's insurance company. The insurance company refused payment under the no-fault policy, presumably causing the insured to be personally liable for the bills. The insured retained an attorney under a contingency fee agreement. *Aetna Cas & Surety Co*, 116 Mich App at 642. The matter was successfully resolved. Then the insured's attorney requested that the medical providers receive 2/3 of the amount of their billing and that he receive the remaining 1/3 of their billing. The trial court denied the insured's attorney's request. This Court reversed, holding that the insured's attorney had a valid attorney's charging lien against the fund recovered. In particular, this Court noted that Michigan law creates an attorney's lien—a specific encumbrance—on a judgment or fund, including a personal protection insurance fund that a client has recovered through the professional services of that attorney. *Id.* at 644-645. Although we are not bound by that decision because it was decided before November 1, 1990, MCR 7.215(J), we find its reasoning instructive and persuasive with regard to the circumstances of this case.

Plaintiff's attorneys had a right to be paid for their services from the amount recovered from Citizens pur-

suant to their contingency fee agreement with plaintiff. This may appear at first blush to be unfair to the medical providers, who provided medical care only to be asked—almost required—to reduce their bills to pay, in part, for the expense of litigation. It is not unfair. As a consequence of plaintiff's attorneys' actions, Citizens, which had denied the application for benefits entirely, agreed to pay personal protection insurance benefits on Ryan's behalf. If Citizens had not agreed to do so, it is doubtful that Ryan's medical providers would have received as much in settlement of their bills because Medicaid, or Ryan, would have been the payer. And if plaintiff had not retained attorneys to litigate this case, it might have been incumbent on each medical provider to retain counsel to litigate its claim on Ryan's behalf against Citizens, which would also cause them to incur the expense of litigation.

Further, it appears to us that, with regard to the payment of plaintiff's attorneys' fees, an equitable, common-law exception to the American rule applies. See *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 37-38; 576 NW2d 641 (1998), citing *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 473-474; 521 NW2d 831 (1994). That exception is the common-fund exception. This exception "only applies when a prevailing party creates or protects a common fund that benefits himself and others." *Nemeth*, 457 Mich at 38 n 11; see, also, *Popma*, 446 Mich at 475. This exception is premised on the equitable principle that it is "unfair to allow others to benefit at the expense of the prevailing party without contribution to the costs incurred in securing the common fund." *Nemeth*, 457 Mich at 38 n 11. Although the common-fund exception usually applies to class actions, litigation against automobile insurers for failure to pay personal protection insurance benefits in breach of their contract with their insured parallels a class action.

See, e.g., *Terra Energy, Ltd v Michigan*, 241 Mich App 393, 401-402; 616 NW2d 691 (2000). An insured plaintiff who prevails in a litigation against the plaintiff's insurer secures payment not only for the plaintiff's benefit, but for the benefit of the plaintiff's medical providers, which were at risk of either not being paid or of receiving a smaller fraction of their billed amounts for their services.

In this case, the DMC was one of several beneficiaries of the settlement that plaintiff's attorneys secured from Citizens, which included payment for the medical services that RIM provided to Ryan from the date of Ryan's admission through January 22, 2008. The DMC is correct that it could have pursued a direct claim for benefits on Ryan's behalf, as discussed above. Before Ryan was admitted to RIM, RIM was aware that Citizens had denied coverage. The DMC could have pursued a claim on Ryan's behalf or intervened in this litigation after it was commenced, but the DMC did not. See *Abston v Aetna Cas & Surety Co*, 131 Mich App 26, 31; 346 NW2d 63 (1983). The DMC could have advised plaintiff's attorneys not to pursue payment for its services or advised Citizens that plaintiff's attorneys did not represent its interests, but the DMC did neither. Instead, the DMC, as well as other medical providers, relied on the efforts of plaintiff's attorneys to enforce claims for payment of services rendered to Ryan. Because plaintiff pursued personal protection insurance benefits through a successful litigation, her attorneys rightfully secured a charging lien against the settlement proceeds—or common fund—pursuant to their contingency fee contract. It would be unfair to allow the DMC, and other medical providers, to benefit from the efforts of plaintiff's attorneys without contributing to the costs incurred in securing insurance proceeds and the common fund.

The DMC relies on *Garcia v Butterworth Hosp*, 226 Mich App 254; 573 NW2d 627 (1997), in support of its position that plaintiff's attorneys' fees should not be deducted from benefits payable to the DMC. That case, however, is clearly distinguishable. The insurer in that case paid benefits without contest, the plaintiff brought the no-fault lawsuit only as a precautionary measure, the lawsuit was dismissed before the complaint was even served, and the insurer and health-care provider actually resolved the matter without the assistance of the plaintiff's attorney. Thus, the attorney's motion for a determination of attorney fees owed to him was properly rejected. In our case, (1) Citizens did contest the payment of Ryan's benefits, (2) a lawsuit was filed, served, and litigated before a settlement was reached, and (3) the medical providers had no involvement in the resolution of the litigation. Similarly, the DMC's reliance on the proposition that it is improper to award attorney fees "solely on the basis of equitable principles" is inapposite because the award of attorney fees here principally arises from the contingency agreement between plaintiff and her attorneys, not merely "equitable principles."

Second, the DMC argues that it should not have to pay for plaintiff's attorneys' fees associated with securing payment for medical services the DMC provided to Ryan because, at the time plaintiff settled the case with Citizens, the DMC had not yet billed Ryan for its services. In other words, the DMC argues, their bill was not "overdue" under MCL 500.3142(2) and MCL 500.3148(1).

MCL 500.3142(2) and (3) provide for payment by the no-fault insurer of penalty interest when personal protection insurance benefits are overdue, after an insurer receives reasonable proof of the fact and of the amount

of loss sustained. See *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 730; 761 NW2d 454 (2008). The statute has no application to the facts of this case. The issue here is whether plaintiff's attorneys were entitled to collect their fees, or charging lien, against the proceeds of the settlement they obtained for plaintiff, not whether the DMC or plaintiff's attorneys were entitled to penalty interest from Citizens. When Ryan was admitted to RIM and began receiving medical services for which he could be personally liable to pay, his loss accrued whether or not a final billing was delivered. That the DMC's bill was not "overdue" at the time a settlement was reached is of no consequence here.

Similarly, the DMC's reliance on MCL 500.3148(1), the no-fault penalty attorney fee provision, is misplaced. MCL 500.3148(1) provides for payment by the no-fault insurer of the insured's overdue personal protection insurance benefits, in addition to the insured's reasonable attorney fees if "the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." This statute has no application to the facts of this case. The issue here is whether plaintiff's attorneys were entitled to collect their fees, or charging lien, against the proceeds of the settlement they obtained for plaintiff, not whether Citizens was also liable to pay penalty attorney fees.

Third, the DMC argues that it should not have to pay for plaintiff's attorneys' fees associated with securing payment for medical services the DMC provided to Ryan because plaintiff's attorneys "did not satisfy the legal and ethical predicates for receiving an attorney fee from payment earned by the DMC." The DMC relies on State Bar of Michigan Formal Ethics Opinion C-226 (September 1982) for the proposition that it is unethical

for an attorney to charge a hospital a fee for medical payments involuntarily paid by a client's no-fault insurance carrier unless the hospital is first notified of the attorney's contemplated legal action and the hospital is given a reasonable opportunity to advise the attorney that it wishes to pursue its own interests without that attorney's legal services. To the extent that the DMC argues that Citizens voluntarily paid Ryan's personal protection insurance benefits, including the DMC's bill for services, that claim is without merit. The DMC was aware that Citizens had denied Ryan's application for benefits even before Ryan was admitted to RIM. The subsequent lawsuit was settled and along with it Ryan's claim for personal protection insurance benefits related to his hospitalization at RIM.

Further, the DMC's argument premised on a lack of notice is untenable. The record evidence is clear: RIM had notice that plaintiff's attorneys were in the process of pursuing legal action against Citizens even before Ryan was admitted to RIM. As the trial court held, the DMC was also aware that plaintiff's attorneys were seeking payment for the DMC's services, even before the matter was settled, but did not advise plaintiff's attorneys, or Citizens, that the DMC wished to pursue its own interests. Thus, this issue is without merit.

And we reject the DMC's argument that the claim by plaintiff's attorneys for fees from the payment earned by the DMC is contrary to public policy. Citizens clearly contested the claim that Ryan was entitled to no-fault benefits, including at the time that he was admitted to RIM. The DMC could have pursued this claim through the use of its own attorneys, and thus would also have incurred the expense of litigating such a claim. Under the circumstances presented in this case, it would be unfair to allow the DMC to receive the benefit of the

litigation without shouldering some of its burden. Therefore, we conclude that the trial court did not abuse its discretion when it held that plaintiff's attorneys were entitled to have part of their attorney fees deducted from the payment to be made to the DMC for medical services provided to Ryan.

Next, the DMC argues that even if plaintiff's attorneys were entitled to attorney fees, the trial court abused its discretion by awarding them unreasonable fees without any analysis of the reasonableness factors. We disagree.

Plaintiff's attorneys were retained to represent plaintiff's interests against Citizens and to challenge the denial of Ryan's application for no-fault insurance benefits through a breach of contract claim. It appears that a typical contingency fee contract was entered into by which plaintiff's attorneys agreed to accept as payment for their services 1/3 of the amount of monies, if any, recovered on plaintiff's behalf. Plaintiff is not challenging the reasonableness of the fee to which plaintiff's attorneys claim entitlement through their contract. It is well established that contracts must be enforced as written. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). The DMC merely argues that the fees that plaintiff's attorneys sought were unreasonable, but the fees sought were agreed to by the parties to the contract and plaintiff is not challenging the contract. The DMC provides no legal support for its unsubstantiated claim that it may contest the amount of attorney fees to which plaintiff's attorneys are entitled pursuant to the contract the attorneys had with plaintiff. We will not search for such authority. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

Further, the DMC's reliance on the holdings of *Smith*, 481 Mich 519, and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982), in support of its position is misplaced. *Smith* involved a determination of the reasonableness of the attorney fees requested as case-evaluation sanctions under MCR 2.403(O)(6), and *Wood* involved the determination of the reasonableness of attorney fees requested as penalty attorney fee sanctions under MCL 500.3148(1). Our case does not involve these issues; rather, this case involves plaintiff's obligation to pay her attorneys the fees agreed to pursuant to a contingency fee agreement that plaintiff is not challenging. Thus, the trial court did not abuse its discretion by awarding plaintiff's attorneys the fees provided for in that contingency agreement.

On cross-appeal, plaintiff argues that the trial court erred by allowing the DMC to remain in the case as a "constructive party" when the DMC had no standing. We disagree. Whether a party has legal standing to assert a claim constitutes a question of law that is reviewed de novo. *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001).

MCL 500.3112 provides, in relevant part:

> Personal protection insurance benefits are payable to or for the benefit of an injured person . . . . Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant *or any other interested person* may apply to the circuit court for an appropriate order. The court may designate the payees and

make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate. [Emphasis added.]

Thus, the DMC, which had provided medical services to Ryan following the automobile accident, was an "interested person" with regard to the apportionment of its bill for services rendered. Because the DMC contested plaintiff's attorneys' right to have their fees deducted from the amount of the DMC's billed services, the trial court properly required the DMC to appear in court to settle the attorney liens. The trial court did not err by providing the DMC with a forum in which to contest and resolve the matter.

And we reject plaintiff's jurisdictional challenge to the DMC's right to appeal in this Court for similar reasons. To have standing to bring an appeal, one must ordinarily be "aggrieved" by the lower court's decision. MCL 7.203(A). To be aggrieved, one must have suffered a concrete and particularized injury. *Spires v Bergman*, 276 Mich App 432, 441-442; 741 NW2d 523 (2007). In this case, the trial court's ruling regarding plaintiff's attorneys' entitlement to attorney fees resulted in the reduction of the amount of money that the DMC attempted to recover for services that it provided to Ryan. Thus, plaintiff's claim that this Court lacks jurisdiction over this appeal by the DMC is without merit.

Next, plaintiff argues on cross-appeal that the trial court erred by denying plaintiff's request to award the DMC the amount that it would have received from Medicaid, approximately $66,000, rather than its billed amount. We disagree. Plaintiff argues that, but for plaintiff's attorneys' actions in securing insurance benefits from Citizens, the DMC would have accepted as

full payment the amount that Medicaid would have paid. However, the record does not support this claim. Ruppman testified that a Medicaid application was submitted on Ryan's behalf after he was admitted to RIM. However, when asked during the evidentiary hearing whether the DMC would have "been willing to accept from Medicaid $66,200," Ruppman replied: "In this case, no." We agree with the trial court's conclusion that the DMC's challenge to the apportionment was made in good faith and does not warrant such a punitive action. Accordingly, the trial court properly denied plaintiff's request in this regard.

Affirmed.