# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF ZAKI JAMEEL TAMS, by
DARREN FINDLING, Personal Representative,

        Plaintiff-Appellee,

and

COCHRAN, FOLEY & ASSOCIATES, PC,

        Appellee,

v

AUTO CLUB INSURANCE ASSOCIATION,
doing business as AAA MICHIGAN,

        Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 332558
Wayne Circuit Court
LC No. 14-015065-NF

---

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

MURRAY, P.J., (*concurring*).

The majority correctly decides to reverse the trial court's judgment in favor of appellee Cochran, Foley & Associates, PC, and to remand for entry of a judgment in favor of defendant Auto Club Insurance Association. I write separately to address an alternative basis to reverse raised by Auto Club, which addresses a fundamental flaw in Cochran's position. That is, can an attorney (Cochran) representing an injured party recover attorney fees from a separate party (Auto Club) for monies owned to a separate nonparty (HAP) with whom the attorney has no contract or attorney-client relationship? The answer is no, and thus my concurrence in the reversal of the trial court's order.

Before any discussion of an attorney's right to recover fees for her services through a charging lien, it is important to recall several general principles about attorney services, attorney fees, and attorney charging liens. First, when it comes to awarding attorney fees, Michigan follows the common-law "American rule," meaning that a court generally cannot award attorney fees to be paid by one party to the other without the statutory or court rule authority to do so. See *Haliw v Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005), and MCL 600.2405(6). Consequently, "[c]onsistent with the common-law American rule, the no-fault act generally requires each party to pay its own attorney fees." *Miller v Citizens Ins Co*, 490 Mich

-1-

904, 904 (2011). The award of attorney fees to plaintiff (and ultimately to Cochran) from what was paid by Auto Club to HAP was not permitted by any court rule or statute. Thus, the American rule provides no legal support for plaintiff to recover fees for its counsel from what Auto Club paid to HAP, a separately represented entity.

The usual source for payment of attorney fees comes from the client. And the obligation to pay (or receive) fees for attorney services comes from contract. As we have said in another context, "[a]n attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995). Particular to contingency fee agreements, both the court rules and the rules of ethics require such agreements between attorney and client to be in writing. See MCR 8.121(F); MRPC 1.5(c).

Once a written contractual agreement exists between attorney and client, as there was in this case *between Cochran and Tams*, there may come a point at the conclusion of a case where the client refuses to pay the attorney for services performed. To remedy this situation, the common law recognizes charging liens, which protect an attorney's ability to collect an unpaid fee from the amount recovered for the client. See, e.g., *Dreiband v Candler*, 166 Mich 49, 51; 131 NW 129 (1911) ("The theory upon which a lien follows a lawful agreement entered into between attorney and client with respect to compensation is that the agreement amounts to an assignment of a portion of the judgment sought to be recovered or expected as the fruit of the litigation."). Thus, when there is a fee dispute between an attorney and her client, the law imposes a lien on any recovery so that the attorney can ultimately be paid a reasonable fee. See *Fannon v Le Beau*, 245 Mich 162, 165; 222 NW 115 (1928); *Kysor Indus Corp v DM Liquidating Co*, 11 Mich App 438, 445; 161 NW2d 452 (1968) (" 'The lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well . . . .' ") (citation omitted); *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013). Thus, for instance, if Tams refused to comply with the contingency fee agreement with Cochran, a charging lien would be imposed on the funds Cochran recovered for Tams so that Cochran could receive the agreed upon compensation.

As the foregoing decisions and others[1] show, to recover under a charging lien it is generally required that an attorney-client relationship exists that allows the attorney to perform services on behalf of the client for a specified fee. If the attorney obtains a successful outcome for her client, the law imposes a charging lien on the recovered funds to ensure the attorney receives her agreed upon fee for services rendered to the client. This is somewhat of a universal

---

[1] See also *Miles v Krainik*, 16 Mich App 7, 8-9; 167 NW2d 479 (1969); *Munro v Munro*, 168 Mich App 138, 139-141; 424 NW2d 16 (1988); *Doxtader v Sivertsen*, 183 Mich App 812, 813-815; 455 NW2d 437 (1990); *George v Sandor M Gelman, PC*, 201 Mich App 474, 475-476; 506 NW2d 583 (1993); *Reynolds v Polen*, 222 Mich App 20, 21-23; 564 NW2d 467 (1997).

proposition except, it appears, in certain cases decided under the no-fault act. Two cases are put forth by Cochran as support for the notion that it can recover a fee from a nonclient party.

The first is *Aetna Cas & Surety Co v Starkey*, 116 Mich App 640; 323 NW2d 325 (1982). *Starkey* was a declaratory judgment action between the insurer and its client over conflicting claims to the benefits owed to the defendant (the client) and the medical providers who wanted full payment for their services. The defendant argued that her attorney should receive his fees from what was owed to the medical providers. *Starkey*, 116 Mich App at 642-643. The trial court ruled that by statute, an attorney fee could only be "charged against the insurer and not against the benefits." *Id*. at 643. This Court disagreed, holding that "defendant's attorney had a valid attorney's lien against the fund recovered and that the trial court erred in ordering payment of the entire amount of PIP benefits to the medical providers." *Id*. at 643-644. The Court's rationale was that,

> defendant and her attorney entered into a contingent fee arrangement whereby the attorney would receive his fee from any settlement or judgment recovered. On the basis of the general principles of law concerning attorneys' charging liens, defendant's attorney had the right to receive his fee from any fund, including the PIP fund, recovered as a result of his services in connection with the auto-accident injuries suffered by defendant's son. [*Id*. at 644.]

It is unclear from the opinion whether the medical providers were involved in, or represented in, the underlying proceedings. The medical providers are not listed in the caption in the declaratory judgment action, but it does appear they were involved in the litigation. *Id*. at 643.

*Starkey's* rationale has been met with mixed views. *Garcia v Butterworth Hosp*, 226 Mich App 254; 573 NW2d 627 (1997), involved a trial court order requiring Farmers Insurance Exchange to pay to plaintiff's counsel a contingent fee from the amount paid from Farmers to Butterworth Hospital for outstanding medical bills. In reversing that order, the *Garcia* Court rejected the *Starkey* Court's reliance on equity and the "common fund" exception to the American rule[2] regarding attorney fees. *Garcia*, 226 Mich App at 256-257. Instead, the *Garcia* Court focused on the rule, rather than the exception, and concluded that no statute or court rule allowed for the award. Additionally, the Court reasoned that because plaintiff's counsel had done little to accomplish the recovery of benefits, if equity applied, it did not help the case. *Id*.

*Miller v Citizens Ins Co*, 288 Mich App 424; 794 NW2d 622 (2010), rev'd in part 490 Mich 904 (2011), preferred the *Starkey* rationale. *Miller* involved a claim against Citizens

---

[2] An exception to the American rule is the "common-fund exception, which . . . applies when a prevailing party creates or protects a common fund that benefits himself and others." *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 38 n 11; 576 NW2d 641 (1998). "Courts of equity hold it unfair to allow others to benefit at the expense of the prevailing party without contribution to the costs incurred in securing the common fund." *Id.* The common-fund exception is generally applicable in class action suits and shareholder derivative actions. See *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson*, 406 Mich 497, 503-504; 280 NW2d 457 (1979).

Insurance Co for outstanding no-fault benefits that ultimately was resolved through a settlement. *Miller*, 288 Mich App at 428. After the settlement was reached, plaintiff's counsel sought a contingency fee from the monies recovered for medical providers, including the Detroit Medical Center. The DMC objected, arguing it had no agreement with plaintiff's counsel, nor did it have notice of plaintiff's counsel's attempts to represent its interests. *Id*. at 429. The trial court rejected these arguments and ordered the contingent fee to be taken out of the monies paid to DMC.

On appeal, the *Miller* Court held, relying on *Starkey*, that plaintiff's counsel "had a right to be paid for their services from the amount recovered from Citizens pursuant to their contingency fee agreement with plaintiff." *Id*. at 436. The Court further held that the "common fund" exception to the American rule provided a basis upon which to award attorney fees to plaintiff's counsel from the monies held by the insurer. *Id*. at 437-438. Finally, the *Miller* Court distinguished *Garcia* on its facts, and in doing so, stated that its decision was "principally" based on the contingency contract plaintiff had with his client, as opposed to equitable principles. *Id*. at 439.

As noted, *Miller* was reversed in part. The reversal, it seems, was as to the attorney fee award. The Supreme Court said this as to the attorney fee portion of the panel's opinion:

> As the Court of Appeals implicitly recognized, the Detroit Medical Center (DMC) is not liable for plaintiff's attorney's fees under the no-fault act. We agree that plaintiff is responsible for payment of her attorney fees consistent with the contingency fee agreement. Consistent with the common-law American rule, the no-fault act generally requires each party to pay its own attorney fees. Plaintiff's reliance on MCL 500.3112 is unavailing because that provision, which permits equitable apportionment of personal protection insurance benefits among payees, does not encompass an award of attorney fees to an insured's counsel. However, the Court of Appeals' reliance on the common-fund exception to the American rule was erroneous because no common fund was created. [*Miller*, 490 Mich at 904.]

This order, it seems to me, provides that (1) the common fund exception to the American rule relied on in part by both the *Starkey* and *Miller* panels does not apply to these no-fault circumstances; (2) plaintiff was solely responsible for payment of the contingent fees for her own counsel's work; and (3) under the no-fault act, each party is responsible for their own attorney fees. In light of this order, there seems to be little left to the *Miller* panel's discussion regarding attorney fees.[3]

---

[3] Though citation to unpublished opinions of this Court is to be done sparingly, MCR 7.215(C)(1), it is worth pointing out that a panel of our Court recently held, in part, that in the absence of a contractual right to do so, a plaintiff's attorney was not entitled to recover a contingency fee for no-fault benefits recovered by a medical provider. *Toma v St Peter Med Ctr*, unpublished per curiam opinion of the Court of Appeals, issued April 20, 2017 (Docket No.

It is also true, as Auto Club recognizes, that a charging lien can be enforced against third parties when the third party has notice of the lien. See, e.g., *Miller v Detroit Auto Inter-Ins Exch*, 139 Mich App 565, 569; 362 NW2d 837 (1984). But that principle merely states a fundamental principle of charging liens, that when a party holds monies owing to a plaintiff, and has notice of the attorney's lien, it must recognize that lien prior to making a payment to the plaintiff. That principle does not address when an attorney can enforce a lien, which is the issue here.

The best that I can glean from these varied decisions is the following. First, if a medical provider is a party to a no-fault case and is represented by counsel, the plaintiff's attorney has no right to collect any fee from whatever is recovered by the medical provider absent, of course, any court rule, statute, or contract to the opposite. *Miller*, 490 Mich at 905; *Garcia*, 226 Mich App at 256-257. Second, when a medical provider is not a party to the case, and is put on notice that plaintiff's counsel is pursuing all outstanding no-fault benefits on behalf of the injured party, plaintiff's counsel is still not entitled to a fee from what that nonparty provider recovers *if* that nonparty rejects plaintiff's counsel's services and/or retains separate counsel, as was done here by HAP. *Miller*, 490 Mich at 905; *Garcia*, 226 Mich App at 256-257. Third, and finally, if a medical provider (a) has notice of plaintiff's counsel's intentions, (b) does not object to those intentions, and/or (c) does not hire its own counsel, then plaintiff's counsel may be entitled to a fee from any outstanding benefits that counsel obtained for that medical provider. *Garcia*, 226 Mich App at 257; *Miller*, 288 Mich App at 438 (discussing equitable principles). Because HAP, a nonparty, was represented by counsel when it recovered the amounts from Auto Club (a fact plaintiff's counsel was aware of), plaintiff's counsel was not entitled to a fee from those monies paid. But even considering the equities, as does the lead opinion, Cochran is not entitled to a fee as it did nothing to spur Auto Club to pay HAP for benefits it had already paid to the medical providers.

/s/ Christopher M. Murray

---

330585). In so holding, the Court recognized that "*Miller* did not abolish the need to establish an attorney-client relationship with a medical provider in order to obtain attorney fees when that medical provider intervenes in the no-fault case." *Id*. at 3.