*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

1ST CALL HOME HEALTHCARE LLC and CLYDE EVERETT,

Plaintiffs-Appellants,

v

PAUL G. VALENTINO J.D., PC,

Defendant-Appellee.

UNPUBLISHED
November 7, 2019

No. 345277
Oakland Circuit Court
LC No. 2018-164923-CK

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Attorney Paul G. Valentino represented an individual injured in a motor vehicle accident, but neglected to have the client sign a written retainer agreement providing for a 1/3 contingency fee as required by MCR 8.121(F). Valentino "referred" his client to 1st Call Home Healthcare for intensive, in-home care. Several months later, Valentino notified the no-fault insurer that based on his unsigned contingency-fee agreement he was entitled to a percentage of the amount the insurer paid to 1st Call. 1st Call objected and filed this suit to recover a series of checks mailed to and retained by Valentino.

The circuit court erroneously determined that Valentino had a valid and enforceable contingency-fee agreement with the injured party and improperly upheld Valentino's lien. We vacate the circuit court's grant of summary disposition in Valentino's favor and remand for further proceedings.

## I. BACKGROUND

Plaintiff, 1st Call Home Healthcare, filed suit against defendant, attorney Paul Valentino, for return of no-fault insurance proceeds paid by Auto-Owners Insurance Company on behalf of its insured, Clyde Everett. 1st Call provided attendant care, nursing care, and case management services to Everett beginning on July 24, 2017. Valentino allegedly served as Everett's attorney in securing no-fault benefits and "referred" Everett to 1st Call. However, Valentino failed to execute a retainer agreement with Everett and Everett declined to sign a contract belatedly presented on February 13, 2018.

-1-

On February 14, 2018, Valentino advised Auto-Owners that he was asserting an attorney's lien over the no-fault benefits paid to 1st Call on Everett's behalf. Auto-Owners then sent payments to Valentino via checks made jointly payable to him and 1st Call.[1] This form of payment continued after Everett assigned his rights to 1st Call and until Everett officially terminated Valentino's services in March 2018.

In its amended complaint, 1st Call accused Valentino of tortious interference with contract, conversion, and claim and delivery, and sought injunctive and declaratory relief. Underlying these claims were 1st Call's allegations that Valentino "asserted an unethical and unlawful referral fee lien on" the claims submitted to Auto-Owners, was "not entitled to any portion of" the payments "voluntarily" made by Auto-Owners, was required to seek any attorney fee directly from his alleged client (Everett), and was not retained by 1st Call to represent its interests in relation to Everett.

Valentino responded to the suit with a motion for summary disposition rather than an answer. Valentino contended that he was, in fact, retained by Everett "in connection with injuries sustained in a motor vehicle accident." Valentino further stated that he "referred Clyde Everett to [1st Call] to provide attendant care, nursing care and case management in July of 2017 with the agreement that [Valentino] would be paid a referral fee of 1/3 of the billing by [1st Call] for all" attendant care, nursing care and case management. He accused 1st Call of "fail[ing] to disclose to [the circuit] court anywhere in its complaint that it entered into a contract with Valentino," which Valentino described as a "Referral Agreement," agreeing to pay a 1/3 fee [to Valentino] of all payments made to it for services provided to Clyde Everett." In an accompanying affidavit, Valentino more fully described:

> That [Valentino] was retained by 1st Call . . . as their general counsel. In addition to acting as general counsel[,] 1st Call . . . agreed to pay [Valentino] a referral fee for referrals of clients in need of attendant care, nursing care and case management. The agreement was that 1st Call . . . would pay 1/3 of all fees payable by first party insurance carriers for the services rendered to any client referred by [Valentino] to 1st Call . . . . That in addition, [Valentino] agreed to represent 1st Call . . . in securing payment from the insurance carriers for those provider charges and would charge no additional fees for those services.

Valentino again justified this "referral fee" arrangement by claiming that he agreed in exchange to represent 1st Call in any litigation related to the referred client "at no additional charge." He also claimed that he served as "general counsel" for 1st Call. These agreements were negotiated through 1st Call employee Robin Silas and after Silas's departure from the company, 1st Call notified Valentino that it intended to breach this "contract" and "not pay the referral fees due to Valentino."

---

[1] Joint payee checks were issued from March 8 through March 27, 2018 for services rendered in February 2018.

Valentino asserted that he had a legal right to possess the checks from Auto-Owners based on his "contract[s]" with Everett and 1st Call and therefore was not liable in tort. And Valentino asserted that his lien right was superior to 1st Call's interest because the healthcare provider was not entitled to the proceeds until Everett executed as assignment of rights pursuant to *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017).[2] Notably, Valentino's claimed entitlement to the checks rested entirely on his alleged contracts with Everett and 1st Call. At no point did Valentino raise a quantum meruit defense.

Valentino also filed a motion requesting permission to deposit the subject checks into an interest-bearing account pending resolution of the litigation. In that motion, Valentino described 1st Call's litigation as a wrongful attempt "to prevent [Valentino] from receiving attorney fees due and owing to [him] for [his] representation of [his] client, Clyde Everett, and [1st Call's] agreement to pay referral fees." He reiterated that his lien was valid based on the attorney-client relationship with Everett and "the referral agreement entered into between" him and 1st Call.

1st Call fought the motion to deposit the checks into an interest-bearing account, contending that Valentino "solicited an illegal and unethical referral fee on all voluntary payments from the no-fault insurer of [his] former client, Clyde Everett, for undisputed home health care services." Valentino, 1st Call emphasized, "has openly confessed to soliciting an illegal referral fee in [his] own motion" and in several emails between the parties. 1st Call denied that Valentino ever acted as its general counsel. 1st Call further denied that Valentino represented it in relation to the Everett matter; no legal representation was needed as the insurer did not dispute the services provided and voluntarily paid the claims.

Valentino retorted that in a case involving Victor Valentino, his brother and his attorney in the current matter—*Univ of Mich Regents v Victor Valentino*, unpublished per curiam opinion of the Court of Appeals, issued May 29, 2018 (Docket No. 339198)—this Court held that a client is required to pay attorney fees on voluntarily made insurance payments when there is an existing fee agreement. Valentino further objected to 1st Call's characterization of his "attorney fees" as "a so called 'kickback or bribe.' " While Valentino admitted that he "referred" Everett to 1st Call, he asserted that he was representing both the injured party and the healthcare provider and therefore was entitled to payment. That the parties sometimes called the arrangement a "referral fee" was not dispositive, Valentino insisted.

Only after challenging Valentino's motion to take action on the insurance checks did 1st Call respond to his motion for summary disposition. 1st Call reiterated its claim that it did not retain Valentino's professional services in relation to the Everett matter and never agreed to pay him a referral fee. Any "referral fee" agreement would have been illegal, 1st Call asserted, under MCL 752.1004[3] and MCL 333.16221.[4] 1st Call also cited the ethical rules applying to the legal

---

[2] The Legislature subsequently legislatively overruled *Covenant* by giving healthcare providers the right to make claims and assert direct causes of action against insurers. See MCL 500.3112, as amended by 2019 PA 21, effective June 11, 2019.

[3] MCL 752.1004 provides:

-3-

profession that prohibit the type of relationship described by Valentino. Specifically, MRPC 1.5(a) prohibits attorneys from entering an agreement to collect an illegal fee. Michigan State Bar Ethics Opinion C-226 (1982), advises, "It is unethical for a lawyer to charge a hospital a fee for medical payments voluntarily paid by a client's no-fault insurance carrier under circumstances where no lawyer-client relationship exists between the hospital and the lawyer." And *Miller v Citizens Ins Co*, 490 Mich 904 (2011), 1st Call urged, instructs that a medical provider is not responsible for payment of its patient's attorney fees under the no-fault act; the injured party is.

Valentino described as "hysterical" and "absurd" 1st Call's contention "that attorney fees on voluntary payments are somehow illegal." Valentino attempted to prove his attorney-client relationship with 1st Call by attaching emails from a 1st Call employee asking Valentino to represent the company in two different cases. Those emails reflected a 1/3 "attorney fee" and the same agreement existed in this case, Valentino asserted. Valentino also described emails between himself and Jason Groth, a principal at 1st Call, updating Valentino "as to the issues with receiving payments for the care being provided to" Everett.

---

A person who solicits, offers, pays, or receives a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part by a health care corporation or health care insurer, or who receives a rebate of a fee or charge for referring an individual to another person for the furnishing of health care benefits, is guilty of a felony, punishable by imprisonment for not more than 4 years, or by a fine of not more than $50,000.00, or both.

[4] MCL 333.16221 provides, in relevant part:

Subject to [MCL 333.16221b], the department shall investigate any allegation that 1 or more of the grounds for disciplinary subcommittee action under this section exist, and may investigate activities related to the practice of a health profession by a licensee, a registrant, or an applicant for licensure or registration. . . . The disciplinary subcommittee shall proceed under [MCL 333.16226] if it finds that 1 or more of the following grounds exist:

* * *

(d) Except as otherwise specifically provided in this section, unethical business practices, consisting of 1 or more of the following:

* * *

 (*ii*) Dividing fees for referral of patients or accepting kickbacks on medical or surgical services, appliances, or medications purchased by or in behalf of patients.

-4-

At the hearing on the cross motions for summary disposition, 1st Call explained that the Groth emails pertained to case management provided by 1st Call's sister corporation, Compass Care. Those emails did not reflect an attorney-client relationship between the company and Valentino, but rather were required "updates to someone who purported to be Clyde Everett's attorney." 1st Call emphasized that Everett never signed a retainer agreement with Valentino, but did assign his rights in writing to 1st Call. Underlying the various counts in its complaint, 1st Call asserted that Valentino wrongfully took possession of the checks issued by Auto-Owners based either on "an illegal referral fee" or on a misperceived "entitlement to a fee on a voluntary payment." The "alleged referral fee contract did not exist but even if it did it would not be enforceable against anyone" as "you can't ask a court to enforce an illegal contract."

The circuit court ultimately granted summary disposition in Valentino's favor in a one-paragraph order, declaring in relevant part, "Defendant has lien rights based on [his] valid fee agreement with Clyde Everett." The court did not consider the legality of the fee arrangement, however, before determining without analysis that the agreement was enforceable. As Valentino filed his attorney lien before Everett executed the assignment with 1st Call, the court ruled that the lien took priority. In this regard, the court noted that 1st Call had no direct right to payment from the insurer prior to the assignment based on the principles of *Covenant*.

1st Call appeals this judgment.

II. ANALYSIS

We review de novo a circuit court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). We also review de novo underlying legal issues. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). Summary disposition is warranted under MCR 2.116(C)(10) when there is no genuine triable issue of material fact and the moving party is entitled to judgment as a matter of law. *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The courts must view the evidence presented in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

Valentino could not claim a 1/3 contingency fee based on a "valid fee agreement with Clyde Everett." MCR 8.121(F) provides that "[c]ontingent fee arrangements made by an attorney with a client must be in writing and a copy provided to the client." MRPC 1.5(c) similarly provides that "[a] contingent-fee agreement shall be in writing and shall state the method by which the fee is to be determined." Valentino did not execute a written contingency-fee agreement with Everett. On February 13, 2018, Valentino realized his error and forwarded a contingency fee agreement to Clyde Everett's son Tom. However, neither Everett nor his son signed the agreement and it never took effect.

Without a written contingency-fee agreement, Valentino had no authority to file a contractual-based lien against Everett's insurance proceeds. "An attorney-client relationship must be established by contract," whether written or not, "before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp*, 212 Mich App 325, 329; 536 NW2d 886 (1995). Because Everett never signed a contingency-fee contract with

Valentino, Valentino has no legal right to a contingent recovery of any proceeds or benefits flowing to Everett. Accordingly, the circuit court erred in resolving the cross motions for summary disposition on the ground that valid contingency-fee agreement favored Valentino's claim. We must vacate the court's opinion and order and remand for further proceedings.

We note that the absence of a written contingency-fee agreement between Paul Valentino and Everett distinguishes this case from the case upon which Valentino tries to hang his hat—*Univ of Mich Regents v Victor Valentino*, unpublished per curiam opinion of the Court of Appeals, issued May 29, 2018 (Docket No. 339198). The client in that case, Larry Reed, hired Victor Valentino "to assist him with his no-fault insurance claim" and executed a written retainer agreement that "included a one-third contingency fee 'of the net recovery . . . received through suit, settlement, or in any other manner.' " *Id*. at 1 (alteration in original). Victor Valentino's success in his legal battle against the University of Michigan health system holds no sway here.

We take this opportunity to provide further guidance to the circuit court. Without a legally cognizable lien rooted in a signed contingency-fee contract, Valentino's defenses against 1st Call's tort claims are limited. Perhaps Valentino can present evidence that his efforts secured Auto-Owners' timely and complete payment of insurance proceeds or created a "common fund" from which all of Everett's healthcare providers benefitted. Under such circumstances, Valentino would be entitled to a lien for compensation of his services. See, e.g., *Mills v Elec Auto-Lite Co*, 396 US 375, 391-392; 90 S Ct 616; 24 L Ed 2d 593 (1970); *Miller v Citizens Ins Co*, 288 Mich App 424, 437-438; 794 NW2d 622 (2010), aff'd in part and rev'd in part on other grounds 490 Mich 905; 804 NW2d 740 (2011). Alternatively, Valentino may have a quantum meruit defense.

Valentino has no ground for recovery based on his purported entry into a referral-fee arrangement with 1st Call, a nonlawyer healthcare provider. MRPC 5.4(a) provides that attorneys "shall not share legal fees with a nonlawyer." And MCL 333.16221(d)(*ii*) prohibits medical professionals from "[d]ividing fees for referral of patients." A contract that violates the Michigan Rules of Professional Conduct is unethical, violates public policy, and is unenforceable. *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 189; 650 NW2d 364 (2002). Accordingly, even if 1st Call had agreed to pay Valentino a 1/3 referral fee, Valentino would have no ground to enforce the agreement.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, 1st Call Home Healthcare may tax costs pursuant to MCR 7.219.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher