# STATE OF MICHIGAN

# COURT OF APPEALS

ADLER STILMAN, PLLC

Plaintiff-Appellant,

v

OAKWOOD HEALTHCARE, INC., and STATE
FARM MUTUAL AUTOMOBILE INSURANCE
ASSOCIATION,

Defendants-Appellees.

UNPUBLISHED
February 13, 2018

No. 333538
Wayne Circuit Court
LC No. 16-003850-NZ

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Plaintiff appeals as of right from the trial court's order granting summary disposition in favor of defendants in this action involving attorney fees. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Adler Stilman PLLC is a law firm that represented a truck driver, Ronald Reese, in connection with injuries he received on the job in January 2014. Defendant Oakwood Healthcare, Inc. (Oakwood) provided medical treatment to Reese after his accident. By way of written correspondence, plaintiff informed Oakwood in March 2014 that it represented Reese; that it was searching for no-fault insurance coverage of his damages, including the fees owed Oakwood; and that plaintiff asserted a lien on any recovery under the contingent-fee arrangement between plaintiff and Reese under which plaintiff was entitled to one-third of any recovery. Oakwood does not contest that plaintiff sent this correspondence to it and it does not appear from the record that Oakwood immediately replied to this correspondence.

Because Reese was an independent contractor and did not own the truck or trailer he was operating, and because the owner apparently did not insure the truck or the trailer, plaintiff began significant efforts over the next several months to find coverage for Reese's damages, including his medical bills incurred treating with Oakwood. Then, in late November 2014, plaintiff, after determining that no other no-fault or workers compensation coverage existed, filed a lawsuit on Reese's behalf against the Michigan Assigned Claims Plan (MACP), as well as the owner of the truck and trailer and several related entities in Case No. 14-015087-NO in the Wayne Circuit Court (the first lawsuit). After the lawsuit was filed, the MACP assigned Reese's claim to defendant State Farm Mutual Automobile Insurance Association (State Farm). A few days later,

Oakwood intervened in that lawsuit. Oakwood also sent a letter to the MACP asserting that it had its own separate legal counsel and disclaiming plaintiff's right to payment of any attorney fees from Oakwood.

After a period of discovery, the case went to case evaluation. Reese and Oakwood received separate case-evaluation awards against State Farm. All three parties accepted those two awards, and State Farm paid Reese $99,000 and $93,500 to Oakwood as a result. Oakwood, objecting to plaintiff's attempt to assert an attorney's charging lien for one-third of the amount awarded to Oakwood, subsequently filed a motion seeking to quash the lien, but then withdrew the motion without it being heard. Oakwood did not pay plaintiff any portion of its recovery, asserting that it had separate representation in the lawsuit and owed plaintiff no attorney fees.

Plaintiff sued Oakwood and State Farm in the present case, asserting that (1) Oakwood should have paid plaintiff one-third of its case-evaluation award against State Farm as an attorney fee, and (2) that State Farm paid Oakwood directly without regard to plaintiff's claimed charging lien for attorney fees. Specifically, plaintiff sought $32,500 in costs and attorney fees. Oakwood and State Farm filed motions for summary disposition in lieu of responsive pleadings, arguing that plaintiff was not entitled to the one-third of Oakwood's case-evaluation award. The trial court, after a brief hearing, agreed with defendants and granted them summary disposition.

On appeal, plaintiff argues that the trial court erred in granting summary disposition of his claims alleging an attorney fee lien against the amount paid to Oakwood by State Farm. We disagree.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision regarding a motion for summary disposition." *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 523; 687 NW2d 143 (2004) (citation omitted). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), the Michigan Supreme Court recognized:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996).[1]

---

[1] While both Oakwood and State Farm brought their motions for summary disposition pursuant to MCR 2.116(C)(8) and (10), where it appears from the record that the trial court relied on documentation beyond the pleadings in deciding the motion, we review the trial court's order as

Whether to impose a claimed attorney's lien is a matter reserved to the trial court's discretion, and such determinations are reviewed by this Court for an abuse of discretion. *Reynolds v Polen*, 222 Mich App 20, 24; 564 NW2d 467 (1997). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v Daimlerchrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006) (citations omitted).

III. ANALYSIS

A. CHARGING LIEN

In *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013), this Court set forth the following legal principles with respect to the creation of what is known as an attorney's charging lien:

> A special or charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *George v Sandor M. Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993). The charging lien "creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id*. Attorney charging liens are not recognized by statute but exist in the common law. *Id*. at 477.

The *Souden* Court also recognized the underlying rationale for the creation of an attorney's charging lien:

> The [attorney's charging] lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well[.] [*Souden*, 303 Mich App at 411, quoting *Kysor Indus Corp v DM Liquidating Co*, 11 Mich App 438, 445; 161 NW2d 452 (1968) (quotation marks and citations omitted in original).]

Therefore, "[a]n attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 334; 536 NW2d 886 (1995). Put another way, while the law will create a lien on a monetary judgment arising out of an attorney's services, such services must inure to the benefit of the attorney's client. *Reynolds*, 222 Mich App at 23-24.

In this case, there is no dispute that Oakwood was not plaintiff's client and that the parties had not entered into a retainer agreement or a contingent fee agreement. Accordingly, under the facts of this case, plaintiff is not entitled to payment from Oakwood for any alleged

---

having been granted pursuant to MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

services rendered to Oakwood on plaintiff's own initiative. While the parties do not dispute that plaintiff sent written correspondence to Oakwood Southshore Hospital and Oakwood Heritage Hospital in March of 2014,[2] the written correspondence advised Oakwood that plaintiff had been hired "to track down insurance through a personal injury protection carrier." The written correspondence further stated, in pertinent part, as follows:

> We are placing you on notice that Mr. Reese has no funds to hire an attorney to pursue this matter. Therefore, he has hired us on a contingent fee arrangement calling for payment to us of 1/3 of the amount of any amounts recovered. *Pursuant to the Michigan No-Fault Act[,] we are placing you on notice that we will be charging your facility a fee for collecting this money on his behalf.*[3]

Absent from this agreement was any indication that Oakwood and plaintiff had agreed to enter into an attorney-client relationship. We also observe that this correspondence was sent directly to Oakwood's locations where Reese received treatment, but it does not appear that a copy was forwarded to or received by legal counsel for Oakwood. In any event, while we are mindful of the significant efforts plaintiff allegedly undertook before litigation was filed in the first lawsuit, as set forth in the May 27, 2016 affidavit of attorney Barry D. Adler filed in the trial court, the record reflects that Oakwood expressly rejected plaintiff's overture to perform legal services on its behalf. For example, in correspondence to the MACP on December 3, 2014, attorney Bruce K. Pazner expressly informed the MACP and attorney Barry D. Adler, "[p]lease be advised that Oakwood Healthcare, Inc. does not authorize Barry Adler or any attorney, other than my office, to represent its interests with respect to this claim."

In support of its assertion that it is entitled to recover 1/3 of the $93,500 paid to Oakwood by State Farm, plaintiff points to this Court's decision in *Aetna Casualty & Surety Co v Starkey*, 116 Mich App 640; 323 NW2d 325 (1982).[4] In *Aetna Casualty & Surety Co*, the defendant and her attorney had executed a contingent fee agreement which allowed the attorney to receive his fee "from any settlement or judgment recovered." *Id*. at 644. Notably, while the insurer, Aetna

---

[2] On appeal, State Farm is adamant that it did not receive notice of any claimed attorney lien on the part of plaintiff.

[3] Notably, on appeal, plaintiff does not specify which provision of the no-fault act, MCL 500.3101 *et seq*., it was referring to.

[4] We note that in a previous decision issued after November 1, 1990, this Court declined to follow *Aetna Casualty & Surety Co* on the basis of what is now MCR 7.215(J)(1). See *Garcia v Butterworth Hosp*, 226 Mich App 254, 257; 573 NW2d 627 (1997). *Aetna Casualty & Surety Co* has also been abrogated on other grounds to the extent that it held that a healthcare provider's direct cause of action against an insurer was prohibited. See *Wyoming Health Chiropractic Health Clinic, PC v Auto-Owners Ins Co*, 308 Mich App 389, 399; 864 NW2d 598 (2014), overruled by *Covenant Med Ctr v State Farm Mut Auto Ins Co*, 500 Mich 191, 203 n 23; 895 NW2d 490 (2017) (holding that under the terms of the no-fault act, a healthcare provider does not have an independent statutory cause of action against a no-fault insurer).

-4-

had originally denied payment under the applicable policy, "claiming that no connection had been established between [the defendant's son's condition] and the automobile accident[,]" the defendant's attorney "was able to establish to Aetna's satisfaction a causal connection between the accident and [the defendant's son's] heart problem." *Id*. at 642. The defendant's attorney then claimed that he would seek his fees from the personal injury protection (PIP) fund at issue, and the medical providers "demanded that they be paid in full." *Id*. The trial court ruled that the defendant's attorney was not entitled to be paid out of the PIP fund, and that Aetna, as the insurer, was liable for his fees. This Court disagreed, stating that "defendant's attorney had a valid attorney's lien against the fund recovered and that the trial court erred in ordering payment of the entire amount of PIP benefits to the medical providers." *Id*. at 643-644. This Court further recognized, in pertinent part, as follows, in its holding:

> In the instant case, defendant and her attorney entered into a contingent fee arrangement whereby the attorney would receive his fee from any settlement or judgment recovered. On the basis of the general principles of law concerning attorneys' charging liens, defendant's attorney had the right to receive his fee from any fund, including the PIP fund, recovered as a result of his services in connection with the auto-accident injuries suffered by defendant's son. [*Id*. at 644.]

Specifically, plaintiff points to the following language from *Aetna Casualty & Surety Co*, asserting that it supports its claim for relief:

> Finally, we reject the contention of the medical providers that they never requested the assistance of defendant's attorney and therefore have no obligation to him. It can be said that medical providers would have an obligation to the attorney, his lien notwithstanding, on the theory of unjust enrichment. The providers knew that the attorney was expending time and energy in substantiating the insurance claims which led to their payment by Aetna. They were willing to accept his assistance in the knowledge that it would result in their payment. Only when it became clear that the attorney would have to assert his lien against the only existing fund, the PIP benefits, did the providers move to deny the attorney his share. [*Aetna Casualty & Surety Co*, 116 Mich App 640.]

The facts of *Aetna* are clearly distinguishable from the present case, particularly where Oakwood, shortly after plaintiff filed suit on behalf of Reese, expressly disavowed plaintiff's attempts to render legal services on its behalf in the recovery of PIP benefits. While it is unclear from the record why Oakwood did not do so earlier in response to plaintiff's March 2014 correspondence, there is also no indication in the record that anyone authorized to make such a decision on behalf of Oakwood received the March 2014 correspondence. The record also reflects that throughout the first lawsuit, Oakwood actively participated in the discovery process and vigorously protected its own interests. Therefore, we are not persuaded that this Court's decision in *Aetna Casualty & Surety Co* supports plaintiff's attempt to recover what is essentially a contingent fee under a theory of unjust enrichment.

The present case is also factually distinguishable from *Miller v Citizens Ins Co*, 288 Mich App 424, 433; 794 NW2d 622 (2010), aff'd in part and rev'd in part on other grounds 490 Mich

905 (2011), where this Court held that the plaintiff's attorneys were "entitled to have attorney fees deducted from the payment" that a medical provider earned in a no-fault case. In so ruling, this Court observed that the plaintiff's attorneys were instrumental in resolving the lawsuit at issue and conducting settlement negotiations and that as a result, the medical providers were not required to establish that their fees were reasonable as contemplated by § 3157 of the no-fault act. *Miller*, 288 Mich App at 434. The Court also found it noteworthy that the medical providers in that case, pursuant to the law existing at the time of that decision, could have brought independent legal actions against the no-fault insurer, but did not do so and "thus they were spared the expense of litigating their own claims." *Id*. at 435. Underlying this Court's rationale was also its recognition that without the plaintiff's attorneys actions in facilitating a settlement, the medical providers in that case would likely not have received as favorable a settlement as they ultimately did. *Id*. at 437. Additionally, this Court observed that the Detroit Medical Center (the DMC), asserting that it was not liable for the plaintiff's attorney lien arising from the funds it recovered, could have advised the no-fault insurer "not to pursue payment for [the DMC's] services or advised [the no-fault insurer] that [the] plaintiff's attorneys did not represent its interests, but the DMC did neither." *Id*. at 438. Under such circumstances, the *Miller* Court concluded, "[it] would be unfair to allow the DMC, and other medical providers, to benefit from the efforts of plaintiff's attorneys without contributing to the costs incurred in securing insurance proceeds[.]" *Id*. The *Miller* Court also distinguished its ruling from that of *Garcia v Butterworth Hosp*, 226 Mich App 254; 573 NW2d 627 (2010), where the plaintiff's counsel's conduct in that case was far less involved, further stating that the award of attorney fees in *Miller* "principally arises from the contingency agreement between plaintiff and her attorneys, not merely "'equitable principles.'" *Miller*, 288 Mich App at 439.

## B. UNJUST ENRICHMENT

We likewise conclude that the trial court properly dismissed plaintiff's unjust enrichment claim. Plaintiff's claim is that it expended investigatory efforts prior to filing the complaint, that the complaint ultimately led to Oakwood recovering approximately $90,000, and it is inequitable for Oakwood to retain that amount without compensating plaintiff $32,500 for its work.

> Unjust enrichment is defined as the unjust retention of " 'money or benefits which in justice and equity belong to another.' " *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952) (citation omitted). "No person is unjustly enriched unless the retention of the benefit would be unjust." *Buell v Orion State Bank*, 327 Mich 43, 56; 41 NW2d 472 (1950). *Buell* also explained: " 'One is not unjustly enriched ... by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.' " *Id.* (citation omitted). [*Tkachik v Mandeville*, 487 Mich 38, 47-48; 790 NW2d 260 (2010)].

"[I]n order to establish a claim of unjust enrichment, plaintiff must demonstrate: (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012). The equitable doctrine of unjust enrichment must be employed with caution because it "vitiates normal contract principles."

*Kammer Asphalt Paving Co v East China Twp Schools*, 443 Mich 176, 186; 504 NW2d 635 (1993).

Based on the evidence presented to the trial court prior to its decision on the motion for summary disposition, we conclude that there was no genuine issue of material fact that plaintiff did not establish the elements necessary to establish unjust enrichment.[5] We base this conclusion on several grounds.

First, we see no inequity in Oakwood retaining its full case evaluation award. As already made clear, both Reese and Oakwood were separately represented by counsel throughout the litigation, and both received their own separate case evaluation award. Each of their counsel presumably received compensation-pursuant to contractual agreements, consistent with the American rule-from their own clients. In general terms, nothing is inequitable about that.

Second, we categorically reject plaintiff's (and the dissent's) more specific propositions that equity demands it be compensated for (1) work performed *prior to filing the lawsuit* and (2) work performed during the litigation while Oakwood was represented by counsel. As to the first proposition, the work plaintiff performed prior to filing suit was done for its client, and (accepting plaintiff's assertions as true) was necessary for his client to proceed in court. Most, if not all, of the asserted work focused on what insurer might cover the client's medical bills.[6] And rightly so, because as the complaint makes clear, plaintiff's client Reese owed Oakwood over $108,000 for services rendered. To properly serve Reese, i.e., to get him out from under a significant debt, plaintiff searched far and wide for insurance coverage.

But the benefit of this work to Oakwood was only incidental. After all, Oakwood knew who owed it for the services rendered (Reese), and thus was not in need of any investigation in order to file suit, if necessary, to recover what was owed. In addressing unjust enrichment arguments in the context of a common fund theory, other courts and commentators have concluded that a medical provider only receives an incidental benefit from the injured party's attorney's efforts, since the medical provider is entitled to be paid for the services rendered to the injured person. See, e.g., *Hayden v MedCenter One Inc*, 828 NW2d 775, 786 (ND, 2013) ("The law firm obtained the insurance proceeds not for the benefit of the medical providers but for the benefit of its clients who hired the law firm to attempt to compel BCBSTX to provide medical insurance coverage. The medical providers received an incidental benefit in this case. We

---

[5] We are somewhat puzzled by the dissent's reference to "the twin doctrines of unjust enrichment and restitution." Plaintiff's claim against Oakwood in Count III is entitled "Unjust Enrichment," with no mention of the remedy of "restitution." Nor is the word "restitution" contained within plaintiff's briefs filed with this Court. But as the dissent does recognize, unjust enrichment can be employed by courts when equity requires that restitution be made to another. *Kammer Asphalt*, 443 Mich at 185. The proper analysis is on unjust enrichment, and nothing more.

[6] Mr. Adler's affidavit establishes this fact. When describing the pre-filing work performed on behalf of his client, each paragraph relates the different avenues taken in search of an insurance policy with the potential to cover his client's bills.

conclude the district court correctly ruled the common fund doctrine does not apply."); *Wilson v Sisters of St Francis Health Servs Inc*, 952 NE2d 793, 797 (Ind App, 2011) ("There is no dispute that St. Francis provided services to T.W. and is entitled to full payment for its services. Wilson presented no evidence that a measurable benefit has been conferred on St. Francis under such circumstances that St. Francis's retention of the Kaiser Permanente insurance payment without payment of attorney fees to Wilson would be unjust."); and *Lynch v Deaconess Med Center*, 113 Wash 2d 162, 165-166; 776 P2d 681 (1989). See also, Reporter's Note, 1 Restatement (Third) of Restitution and Unjust Enrichment, § 29, p 457 (the majority view holds that "an ordinary creditor [including one whose claim has been reduced to a judgment] cannot be liable on a common-fund theory to contribute to the cost of successful litigation by the debtor, notwithstanding that [the] debtor's tort claim might be [the] creditor's only realistic hope of payment"). Similarly, the work performed by Adler prior to instituting the lawsuit was for his retained client, and any benefit to Oakwood from that work was merely incidental.

As to the second proposition, plaintiff and the dissent argue that, under both unjust enrichment and the common fund exception to the American rule, plaintiff *could potentially* recover fees from Oakwood for work performed *during* the litigation. We respectfully disagree. The common fund exception is simply inapplicable. For one, both the plaintiff and dissent gloss over the narrow realm of cases in which the exception applies. As recognized in both *Mills v Electric Auto-Lite Co*, 396 US 375, 391-392; 90 S Ct 616; 24 L Ed 2d 593 (1970) and *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson*, 406 Mich 497, 460; 280 NW2d 457 (1979), relied upon by the dissent, the exception has been limited to use in class actions or, for example, shareholder suits that benefit a large number of shareholders. This case is not within that realm of cases, and as explained above, *Miller*-the only case supporting the common fund exception in an individual, non-class insurance case-is significantly distinguishable from our facts.

Additionally, we read the *Miller* Supreme Court order, in conjunction with what the Court of Appeals panel held, to legally dispose of plaintiff's common fund argument. As explained, the *Miller* panel held that the common fund exception applied because (1) "litigation against automobile insurers for failure to pay personal protection insurance benefits in breach of their contract with their insured parallels a class action," and (2) "[a]n insured plaintiff who prevails in a litigation against the plaintiff's insurer secures payment not only for the plaintiff's benefit, but for the benefit of the plaintiff's medical providers … ." *Miller*, 288 Mich App at 438. On appeal the Supreme Court concluded, amongst other things, that "the Court of Appeals' reliance on the common-fund exception to the American rule was erroneous because no common fund was created." *Miller*, 490 Mich at 905.[7] That rather straight-forward language makes clear

---

[7] The Court also concluded that the medical provider in that case "is not liable for plaintiff's attorney's fees under the no-fault act," and that "plaintiff is responsible for payment of her attorney fees consistent with the contingency fee agreement," *Miller*, 490 Mich at 905.

that the *Miller* panel's conclusion that the common fund exception to the American rule was applicable under these circumstances was erroneous.[8]

Finally, the dissent would prefer to remand the issue for the trial court to "flesh out" plaintiff's entitlement to pre-and post-filing attorney fees. To do so, however, would likely create a "mini-trial" quite unlike what is typically done when one party seeks an award of attorney fees. Here, both plaintiff and counsel for Oakwood would have to submit evidence (billings, pleadings, testimony, etc.) and argue over who did the most (or most important) work towards the ultimate success. Would that be based on the number of billable hours, or who filed the most motions, or which motions or arguments caused the ultimate success, or who came up with the successful strategy? And if the court finds that one counsel did "more" to cause the plaintiff to prevail, it would then have to determine whether equity required the party whose counsel did less towards the ultimate success to make a contribution towards the other party's attorney fees.[9] That is, in fact, precisely the arguments made by present counsel. To allow such a procedure to occur in the absence of a statute or court rule would be imprudent, indeed impermissible. We therefore conclude that in an individual no-fault case like this, where both parties are represented by their own counsel from the start of the litigation, the American rule prevails and each party is responsible for its own fees.

On the basis of the foregoing analysis, we conclude that the trial court properly granted summary disposition in favor of defendants. Given our disposition of this appeal, we need not address plaintiff's remaining arguments that its claims were not barred by the doctrine of res judicata or as a result of the judgment entered following case evaluation in the first lawsuit.

## IV. CONCLUSION

We affirm the trial court's order granting summary disposition in favor of defendants. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

---

[8] As noted, there are sound decisions from our Sister States concluding that the common fund exception does not apply to the recovery of funds for medical providers as a result of an individual insurance benefit coverage case. See, e.g., *Wendling v Southern Illinois Hosp Services*, 242 Ill 2d 261, 271; 950 NE2d 646 (2011)("Plaintiffs' attorneys did not recover the settlements for the benefit of a class, but, rather, for the benefit of their clients."); *Hayden*, 828 NW2d at 784-786.

[9] And, of course, the court would also have to determine whether the requested fees are reasonable.